[Civ. No. 10644. First Appellate District, Division One.—April 5, 1938.]

In the Matter of the Estate of AGNES M. BOURN, Deceased. ELIZABETH VINCENT BURGH et al., Appellants, v. MAUD BOURN HAYNE, Respondent.

Sloss, Turner & Finney, M. C. Sloss, Warren Olney, Jr., John W. Parker, Robert L. Lipman and McCutchen, Olney, Mannon & Greene for Appellants.

Brobeck, Phleger & Harrison for Respondent.

KNIGHT, J.—At the time of the final settlement of the estate of Agnes M. Bourn, deceased, the probate court was called upon to construe one of the provisions of a codicil to the decedent's will creating an annuity in favor of the respondent, Mrs. Maud Bourn Hayne, the point at issue being as to the amount of annual payment that should be made thereunder; and from that portion of the decree of final distribution determining said issue the executors and several beneficiaries have appealed, contending as main ground for reversal that the court erred in construing in their technical sense certain technical words used in the provision creating said annuity.

The pertinent facts are these: The decedent was the wife of William B. Bourn. She died January 3, 1936, and her husband's death occurred six months later. By the provisions of article IV of her will Mrs. Bourn set aside a trust fund of $550,000, and directed payment therefrom of nine annuities. On the same day, September 17, 1929, she executed a codicil increasing the *corpus* of the trust to $600,000, and creating three additional annuities. The annuitants named were Mr. Bourn's three sisters, one of whom was Mrs. Hayne; and the separate provisions of the codicil creating said three annuities were identical in form. The will and the codicil were drawn by an attorney; and the following is the provision of the codicil creating the annuity in favor of Mrs. Hayne: "I . . . add to the annuities provided for in said article (IV) the following: An annuity to Maud Bourn Hayne, the sister of my husband, during her life, in such amount as will, when added to any *annuity or annuities* otherwise provided for her by my husband by will or otherwise, or by my husband and myself, directly or through the medium of Filoli Estate, or otherwise, make a total annuity of eighty-four hundred (8400) dollars a year." (Italics ours.) At the time the codicil was executed Mr. Bourn had already made his will, and Mrs. Bourn knew of its contents. In that will he had provided Mrs. Hayne

with an annual annuity of $3,600; and through the medium of Filoli estate (a family corporation) she had been provided with and was then receiving an annual annuity of $2,400, of which Mrs. Bourn was also aware; so that if those conditions had remained unchanged the amount of annuity Mrs. Hayne would have been entitled to receive from Mrs. Bourn's estate would have been $2,400 a year. However, on October 3, 1934, fifteen months before Mrs. Bourn died and approximately twenty-one months prior to the death of Mr. Bourn, he made a new will. It was drawn by the same attorney who drew Mrs. Bourn's will and codicil, and in his later will Mr. Bourn made no provision for an annuity for Mrs. Hayne, as he had in his earlier will, but in lieu thereof he bequeathed to her during her life one-third of the net income of his residual estate. Appellants claimed, however, on proceedings for final distribution, that whatever she received under Mr. Bourn's will as such gift of income, although admittedly not constituting an annuity, must nevertheless be taken into account in reducing the amount of annuity she was entitled to receive under the codicil to Mrs. Bourn's will; that accordingly if her share of said income in any one year when added to the Filoli estate annuity equalled $8,400, she would be entitled to nothing from Mrs. Bourn's estate; or if when added to the Filoli estate annuity it did not equal $8,400 she would be entitled only to the difference. After hearing the evidence, however, the probate court held in effect that there was no ambiguity or uncertainty in the language used in the codicil to Mrs. Bourn's will creating said annuity in favor of Mrs. Hayne, and that the codicil and the will had been drawn by a lawyer of profound legal learning and many years experience; that therefore, under the provisions of section 106 of the Probate Code, the technical words ''annuity or annuities'' over which the controversy arose, must be taken in their technical sense. The court then went on to hold in conformity with the established law upon the subject that a gift of income is not an annuity; that such being the case the proceeds received by Mrs. Hayne as her share of the income from Mr. Bourn's estate could not be taken into consideration in computing the amount of the annuity bequeathed to her by Mrs. Bourn; that consequently she was entitled to an annual annuity from Mrs. Bourn's estate in

the sum of $6,000; and an adjudication to that effect was embodied in its decree.

 We are of the opinion that the probate court's decision is fully supported. As declared by said section 106, " . . . technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense"; and it is held generally that where the will is drawn by a lawyer whose experience and competence are beyond question, the presumption that legal terms embodied in the will are used in their legal sense is all but conclusive. (See *Hay* v. *Dole,* 119 Me. 421 [111 Atl. 713]; *In re Leonard's Will,* 143 Misc. 172 [256 N. Y. Supp. 355], citing numerous authorities.) Here, as pointed out by the probate court, the will and the codicils thereto (there were four of them) were drafted by a lawyer of competence and experience; and admittedly there is a broad, well-recognized legal distinction between an annuity and a gift of income; furthermore, the estate which was to be disposed of by said testamentary documents was known to be very large, the same having been later appraised at more than three million dollars. It is certain, therefore, that in order to express accurately the true intent and wishes of the testatrix, and to avoid ambiguity and hence future dispute, all of said documents were prepared with deliberation, and all legal terms employed in drafting the same selected with studied care.

Moreover, the numerous provisions of said testamentary documents themselves demonstrate beyond question that at the time Mrs. Bourn executed the same she had definitely in mind the difference between an annuity and a mere gift of income, and that in disposing of her vast estate she used each of those terms advisedly and with discrimination. In this respect it appears that by said testamentary documents she created seventeen or more cash legacies and directed that the amounts of several of them be computed in a manner prescribed therein by her; that in addition thereto she created, but in very different and appropriate language, some thirteen annuities, and directed also that the amounts of the three created by the first codicil be computed in a manner therein prescribed by her, but which was widely different

from the one prescribed for the computing of the amounts of said legacies. Thus with respect to the legacies she directed that the gift to Mills Memorial Hospital be reduced by *"amounts* given it by my husband either by will or otherwise"; that the gift to St. Luke's Hospital be reduced by any *"gift or gifts* to said hospital" received by it from "my husband by will or otherwise"; that the gift to Episcopal Cathedral of San Francisco be reduced by *"any gifts* by my husband for the same purpose". Furthermore, by her will she bequeathed to her son-in-law, Arthur Rose Vincent, annually during his life twenty per cent of the income of her residual estate; but by the third codicil to her will she limited the total amount he should receive by directing that he be paid annually during life from said income "such sum as may be required to make the total aggregate *amount* which he receives under my will, *under the will of my husband, and under or by virtue of any trusts which my husband or myself may have established in our lifetimes* . . . equal to the sum of Seventy Thousand (70,000) Dollars per annum." (All italics ours.) It is plain to be seen, therefore, that when she intended that the amount of a bequest should be reduced not only by annuities created by her husband, but also by any other character of gifts provided by him, she so declared, and made her intention abundantly clear.

But, as stated, in sharp contrast therewith was the method prescribed for computing the amounts of said three annuities. As to each of them she restricted the deductions to *"any annuity or annuities"* provided by her husband or through the medium of Filoli estate. From the foregoing it is quite obvious that if she had intended, as in the case of said legacies, that the amounts of said annuities be fixed by deducting from said stated sum not only the amounts of any "annuity or annuities" provided by her husband, but also the amounts of any gift or gifts provided by him, including a gift of income, she would have used language similar to that used in reducing the amounts of the legacies. (*In re Gurnee,* 84 Misc. 324 [147 N. Y. Supp. 396], 214 N. Y. 660 [108 N. E. 1095].) But she did not do so. On the contrary, as shown, she limited such reduction to "any annuity or annuities" provided by him.

We have, then, a will which with clearness and precision distinguishes annuities from other kinds of gifts, including

gifts of income, and besides uses those different terms in their proper legal sense; and manifestly, in that situation, to hold as appellants contend should be held, that the term "any annuity or annuities" shall be construed to include the gift of income bequeathed by Mr. Bourn to Mrs. Hayne would not only be doing violence to the legal meaning of the term "annuity", but in effect would be rewriting the provisions of Mrs. Bourn's will. ■ Nor would it make the slightest difference that when Mrs. Bourn made her codicil she did not contemplate that her husband would later change the provisions of his will so as to provide Mrs. Hayne with a gift of income instead of an annuity, for it is well settled that conditions or circumstances arising subsequent to the execution of a will and which were probably not foreseen or anticipated at the time cannot alter the construction of the language of the will, any more than can changed circumstances of a beneficiary justify a court in modifying testamentary provisions to meet such changed circumstances. (69 Cor. Jur., p. 130.)

■ Appellants agree that said words "annuity or annuities" have a well-defined legal meaning; also that it is settled law that a gift of income is not an annuity, and that therefore, if said words are to be taken in their technical sense the decision of the probate court is sound. But they contend that the context of said codicil clearly indicates an intention to employ said words not in a technical sense, but in their ordinary, grammatical meaning; and in this behalf they make two principal points, both of which are based on the provisions of subdivision 3 of section 161 of the Probate Code (formerly section 1357 of the Civil Code). Their first point is that as defined by said code section an annuity in its technical sense must be a legacy or bequest; that therefore when Mrs. Bourn spoke in her codicil of any annuity or annuities provided by her husband by will "or otherwise", or "through the medium of Filoli Estate or otherwise", she was evidently using said words annuity or annuities in a general rather than a technical sense, because, so they assert, any annuity provided by Mr. Bourn "otherwise" than by will, or "through the medium of Filoli Estate", would not be a legacy or a bequest, and hence not an annuity. There is no merit in the point. As stated in California Jurisprudence, " . . . the code, in defining an annuity as a be-

quest, has not intended to declare that annuities cannot be granted otherwise than by will. The general rule is that an annuity may be granted by deed as well as by will, may be given by way of marriage settlement or gift, or like any other chose in action may be the subject of a contract.'' (2 Cal. Jur., sec. 1, p. 77; see, also, cases cited in Commissioner's note, Civ. Code, sec. 1357, and 2 Ruling Case Law, p. 2.)

Secondly, they contend that despite the fact that in drawing said codicil the term ''annuity'' was selected as the proper legal appellation to describe the bequests Mrs. Bourn was therein making in favor of Mr. Bourn's three sisters, and also the periodic payments they were then receiving through the medium of Filoli estate, said term was used nevertheless in each instance in a nontechnical sense for the reason, so appellants claim, that neither of said bequests nor said payments constituted a true annuity within the meaning of said subdivision 3 of section 161 of the Probate Code. The principal ground of attack thus made against the legal status of said annuities is that they are payable from trust funds with no provision being made that resort may be had to the general assets in case the trust fund fails in whole or in part; that therefore said annuities do not provide for the payment of ''certain specified sums'' (subd. 3, sec. 161, Prob. Code), because, so appellants claim, the amounts to be paid may fluctuate according to the sufficiency of the trust fund. Appellants argue, therefore, that if in those instances the term ''annuity'' was used in a nontechnical sense, it follows necessarily that it was used likewise in a nontechnical sense in referring to ''any annuity or annuities'' provided by Mr. Bourn.

It is doubtless the law, however, as shown by the authorities cited in respondent's brief, that an annuity may be made payable generally out of any assets of the testator or grantor, or through the medium of trustees, from a trust fund set aside for such purpose (*In re Johnson's Estate,* 144 Misc. 60 [258 N. Y. Supp. 850]), and that in the latter case it is not essential to the legal status of the annuity that some provision be made to the effect that resort may be had to the general assets in case the trust fund fails in whole or in part; that whether or not in any given case the general assets may be resorted to depends entirely upon the intention of the testator or grantor, as expressed by him in the trust instru-

ment. In other words, as declared by section 163 of the Probate Code, formerly section 1370 of the Civil Code, "The provisions of this chapter (of which section 161 defining an annuity is a part) are in all cases to be controlled by a testator's express intention"; and it follows, therefore, as provided in subdivision 3 of said section 161, that if the fund or property out of which the annuity is payable fails, in whole or in part, resort may be had to the general assets, as in the case of a general legacy. (*Matter of Kohler*, 96 Misc. 433 [160 N. Y. Supp. 669], cited approvingly in *In re Johnson's Estate, supra.*) On the other hand, if it appears from the document creating the annuity that it was the intention of the testator or grantor that resort was not to be had to the general assets, such intention must prevail (*Estate of Phelps*, 179 Cal. 703 [178 Pac. 846]); but even in such case the legal character of the annuity is not destroyed, and the annuitant is entitled to the payment of the annuity so long as the annuity fund created for such purpose is adequate to that end. The following are among the other authorities cited by respondent from which the foregoing doctrine is deducible: *Crew* v. *Pratt*, 119 Cal. 131 [51 Pac. 44]; Pomeroy on Equity Jurisprudence, sec. 1134; Lumley on Annuities, p. 294; *Creed* v. *Creed*, 11 Cl. & Finn. 491 [8 Eng. Rep. 1187] (1844); *Mann* v. *Copeland*, 2 Madd. V. C. 223 [56 Eng. Rep. 317] (1817); *Lomax* v. *Lomax*, 12 Beav. 281, 285 [50 Eng. Rep. 1070] (1849); *Ion* v. *Ashton*, 28 Beav. 379 [54 Eng. Rep. 411] (1860); Hawkins on Wills, p. 290.

Furthermore, it may be stated in answer to the above contention that appellants fail to point to anything in the context of any of the testamentary documents executed by Mrs. Bourn or elsewhere in the record to justify the inference that the trust funds out of which said two annuities are payable are likely to fail in whole or in part. Quite to the contrary, it appears that Mr. Bourn made ample provision in his will to guarantee the full payment of the numerous Filoli estate annuities out of the residue of his estate in case the Filoli estate fund created for such purpose proved insufficient; and Mrs. Bourn provided in her will that resort may be had to the *corpus* of the $600,000 trust set aside by her for the payment of the annuities she had therein provided, if the income from said fund became inadequate. It would

seem, therefore, in view of the foregoing factual situation, that appellants' contention is fundamentally unsupported.

In any event, the provisions of the Probate Code declare that a clear and distinct bequest cannot be affected by other words not equally clear and distinct or "by inference or argument from other parts of the will" (sec. 104, Probate Code); and it is a well-established principle of law that when the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation even though it seems equally tenable. (*Kautz* v. *Zurich Gen. A. & L. Ins. Co.*, 212 Cal. 576 [300 Pac. 34]; *Estate of Boyd*, 24 Cal. App. (2d) 287 [74 Pac. (2d) 1049].) Here the probate court held in effect that Mrs. Bourn's bequest to Mrs. Hayne was clear and distinct, and that therefore the legal meaning of the words "annuity or annuities" as used in said codicil in connection with Mr. Bourn's will could not be altered, broadened or destroyed by inferences or arguments founded on words taken from other parts of the will (*Estate of Oliver*, 10 Cal. App. (2d) 336 [51 Pac. (2d) 1118]; *Estate of Oliver*, 21 Cal. App. (2d) 106 [68 Pac. (2d) 735]); and we are convinced that for the reasons already stated such construction appears both reasonable and consistent with the intent of the testatrix.

Nor can it be held, as appellants further contend, that the annuity provided by Mrs. Bourn for Mrs. Hayne is not a bequest of "certain specified sums" merely because the amount of said annuity is to be ascertained by the process of subtracting from the stated sum of $8,400 the amounts of the annuities she received from other sources. "That is certain which can be made certain" (Civ. Code, sec. 3538) is a maxim which applies in probate proceedings (*Estate of Clarke*, 103 Cal. App. 243 [284 Pac. 231]) as well as in civil cases (*H. & W. Pierce Inc.* v. *Santa Barbara County*, 40 Cal. App. 302 [180 Pac. 641]); and as held in the latter case a sum is deemed certain where as here it can be made so simply by calculation. We find nothing in the cases cited by appellants including the *Estate of Brown*, 143 Cal. 450 [77 Pac. 160], which conflicts with the views hereinabove expressed. They were cases wherein the wills disclosed no intention whatever to create annuities. Pure gifts of income were there bequeathed, payable exclusively out of income

or net profits. It was held, therefore, in accordance with the settled law upon the subject, and contrary to the contentions therein made by the beneficiaries, that said gifts of income were not annuities, and consequently were not payable out of the general assets or from the date of the testator's death.

The remaining point presented by the appeal relates to the competency of certain testimony given at the trial by the attorney who drew said testamentary documents, as to conversations had with Mrs. Bourn just prior to the time said codicil was drawn and executed. The substance of such testimony was that during said conversations Mrs. Bourn expressed herself as much perturbed at the provisions made by her husband in his will for his three sisters; that she considered the same inadequate, and unworthy of a man of his financial means and position; and that from time to time she had remonstrated with him about the matter, but had been unable to persuade him to make any change; that finally, during said conversations and in response to an inquiry made by Mrs. Bourn as to whether she could make suitable testamentary provision for them herself, said attorney suggested that by her will she could provide that they should receive an annuity in addition to whatever Mr. Bourn might give them, or that she might by will give them an amount sufficient to make up whatever she thought would be suitable; that thereupon he drafted the codicil accordingly and mailed it to her with a letter explaining its purpose and effect. Said oral testimony was admitted over respondent's objection and subject to a motion to strike; and before the cause was submitted for decision the probate court granted respondent's motion in part, by striking out the testimony as to the substance of said oral conversations and permitting the letter to remain as part of the evidence in the case.

We find no error in the trial court's ruling. The last clause of section 105 of the Probate Code, which is a reenactment of section 1318 of the Civil Code, provides that when an uncertainty arises on the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, but excluding the oral declarations of the testator as to his intention; and the testimony in question was introduced by appellants in

furtherance of their theory that an uncertainty had arisen upon the face of the will by reason of the use of the technical term "any annuity or annuities". But as held by the probate court, and properly so in our opinion, no such uncertainty existed. Moreover, the testimony was doubtless incompetent for the reason that said conversations necessarily involved the declarations of the testatrix as to her intentions. ■ And in any event, the law is well established that in construing a will, the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed in the language of the will, the issue before the court being, always, not what the testator meant to do or what he intended to declare in his will or what words he meant to use therein, but what he meant by what he did declare therein and by the words he actually used in his will (*Estate of Major*, 89 Cal. App. 238 [264 Pac. 542]; *Estate of Ogden*, 78 Cal. App. 412 [248 Pac. 680]); and where, as here, the language of the will is clear and unambiguous, courts have no power to speculate as to the testator's intention. (*Estate of Hartman*, 21 Cal. App. (2d) 266 [68 Pac. (2d) 744].)

■ It follows, therefore, that even though the testimony as to said conversation be deemed competent, its exclusion was not prejudicial because the statements so made by the testatrix to said attorney, whatever they may have been, cannot be allowed to alter the unambiguous terms of the will.

The decree is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 5, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1938. Langdon, J., voted for a hearing.