58 Cal.App.2d 376 (1943)
Estate of FRANK J. COOK, Deceased. LORETTA COOK KURTZ, Appellant,
v.
IRMA A. HEYES, as Administratrix, etc., et al., Respondents.
Civ. No. 13962. 
California Court of Appeals. Second Dist., Div. Three. 
Apr. 27, 1943.
 Earle M. Daniels and Hallam Mathews for Appellant.
 Freston & Files, R. E. Lewis and Robert H. Dietrich for Respondents.
 SHINN, Acting P. J.
 Frank J. Cook died testate at Los Angeles on June 29, 1941. Surviving him were Ethel G. Cook, his widow, and Loretta Cook Kurtz, his daughter by a former marriage and his only other heir at law, appellant herein. Subsequent to his death and on August 1, 1941, his widow was declared to be an incompetent person in proceedings had therefor and Irma C. Heyes was appointed guardian of her person and estate. Thereafter and on March 25, 1942, said incompetent deceased intestate at Los Angeles leaving property and estate now in the course of administration. Frank J. Cook left a brief holographic will wherein he mentioned his daughter and two brothers and a sister without naming any of them, all of whom later appeared and identified themselves as Loretta Cook Kurtz, daughter, Joseph L. Cook, Walter R. Cook and Loretta Cook McNeill, brothers and sister respectively. The present controversy arises over the construction of the will of Frank and his intent to be drawn therefrom, that is, whether he intended an outright grant of the fee of his estate to his wife Ethel, or whether he intended to grant her no more than a life estate with the remainder at her death over to his daughter and his two brothers and sister in the preportions set forth.
 The will reads as follows: "All I have goes to Ethel the best wife a man could have. My passing out is no reflection on her but the result of a guilty conscience and a selfish mispent life. At her death I would like my sister and brothers [TEXT STRICKEN]-[and]- get at least 2000.00 each of my money and the balance to go to my daughter. Frank J. Cook 6/29/41."
 The appeal is by Loretta Cook Kurtz from the decree, which ordered the payment of legacies of $2,000 each to the sister and two brothers and distributed the remainder of the estate to appellant; also from an order for the sale of certain stocks of the estate to obtain funds for payment of the legacies.
 Appellant in her opening brief states that although it would *378 appear that the construction which was given the will was favorable to her, she claims even greater rights, namely, all of her father's estate, which she contends was his separate property and would go to her as his sole heir because his widow left surviving her neither spouse nor issue (Probate Code, sec. 229). Appellant's right to prosecute the appeal is not challenged by respondents.
 The principal question is whether it was the intention of the testator to leave his estate to his wife during her lifetime, with remainder over to his daughter, appellant, subject to the payment of legacies to his sister and brothers, or to leave it absolutely to his wife, with the expression of his desire that she make provision for his sister, his brothers and his daughter to the extent stated in the will.
 [1] We have accepted as a guide and as a basis for an analysis of the will the statement in Estate of Marti, (1901) 132 Cal. 666 [61 P. 964, 64 P. 1071], as follows (p. 671): "While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms." From our study of the cases it appears that the rule, broadly stated, is that when the person to whom a request is directed has nothing to do but to carry it into effect, which is usually true in the case of an executor, it will be deemed mandatory, but that if the desire is so stated as to indicate the testator's intention to merely influence and not control some future action to be taken by the person addressed, as is usually the case where such person is a beneficiary, the expression will be construed as precatory or as not effecting a testamentary disposition. We have reached the conclusion that the latter interpretation is the correct one and that the decree should be reversed.
 [2] The words "All I have goes to Ethel" are positive, unequivocal, and complete in themselves. What follows is not stated by way of qualification but merely as a request. In the final sentence the words "at least" are the significant ones. They unmistakably indicate an intention that the wife would be called upon to act affirmatively with respect to carrying into effect the wishes of the testator. A man does not make a present disposition of his property by saying, "I give to my sister and to each of my brothers 'at least' $2,000 and the balance to go to my daughter," but that language would be quite appropriate for the expression of a request. *379 The phrase "at least $2,000 each" means "$2,000 or more each" and as used in the will means that the testator was attempting to influence the discretion of someone who would have the power to dispose of what remained of the estate upon the death of his wife. That person was his widow and could have been no one else. If she had chosen to leave all of the estate to the brothers and the sister to the exclusion of the daughter, the request would not have been violated. If the widow had consumed all of the estate in disregard of the expressed wish that the brothers and the sister receive "at lease $2,000 each," she would have done no more than to disregard the wishes of the testator. If she had considered herself bound to provide for the others, she would have realized that her husband had had in mind not their necessities or their deserts at the time the will was written but what they might be at the time of the wife's death, and that she was expected to divide the remainder among the brothers and the sister on the one hand and the daughter on the other, in view of their respective claims upon her bounty as of the time when she would choose to make her decision. The wish as expressed was definite as to the amount of $6,000 but the will went no further than that even by way of suggestion. And even then the words were addressed to her as the owner of the estate by virtue of the will and in no other capacity. She was not named as executrix. Had the testator been intending to make a present disposition of his estate in which his daughter would share, he would scarcely have phrased the will so as to express a mere wish, especially in terms that would allow his widow free to leave all of her estate to the brothers and the sister. Upon the other hand, the will as written is entirely consistent with the view that the testator understood that his entire estate would go to his wife unconditionally so that she might use it and dispose of it by will as she might see fit. In other words, the brothers and sister and the daughter were not provided for by the will; they were to be provided for through some action of the widow of a testamentary character. It was that action which the testator sought to influence and not to direct. The brothers and sister and the daughter were to take according to the wishes of the widow, and the fact that in the discretion of the widow the daughter might receive nothing is convincing proof that the testator did not understand that she was a beneficiary under his own will. *380
 We regard the will in question to be analogous to the ones construed in Estate of Marti, supra, 132 Cal. 666, and Estate of Goldthwaite, (1934) 140 Cal.App. 551 [35 P.2d 1050], cited by appellant, rather than to those construed in Estate of Tooley, (1915) 170 Cal. 164 [149 P. 574, Ann.Cas. 1917 B, 516], and Estate of Mayne, (1938) 28 Cal.App.2d 340 [82 P.2d 504], upon which respondents rely.
 In Estate of Tooley the will read:
 "I give all my property at my death to my daughter Logan Mattie Tooley."
 "If at her death she has neither husband or children I desire any property that may be left divided equally among my sisters and brother."
 "Martha L. Tooley."
 In Estate of Mayne the will read:
 "In case of my accidental departure of this life, I leave all my property to my husband, Frank K. Mayne."
 "To be carefully kept and finally divided equally between Frances and Walter--if any remains after Frank's passing on."
 "Lucy Cushman Mayne."
 In Estate of Marti, supra, the will left all of the husband's estate to his wife, named her as executrix, and provided: "Upon the death of my wife, I desire that one half of the property bequeathed to her shall be devised by her to my relatives."
 In Estate of Goldthwaite, supra, the will left the son's home and furnishings to his father and was supplemented by a writing reading as follows:
 "March 28, 1931."
 "Father--"
 "If anything should happen to me (die or be killed) enroute to or from California, or while there, will you do me the everlasting favor of giving one-half the proceeds from the sale of my house and furniture to Mary Johnson, 55 Pineapple St., Brooklyn, N.Y. As you know if you ever get this, the entire house and furniture is willed to you, but I love Mary very much and would like to have her have one-half."
 "Thanks, Father."
 "Spen"
 "(Spencer Goldthwaite)"
 "I hereby witness that the above was written by Spencer *381 Goldthwaite on March 28, 1931, and that the above is his own signature."
 "Robert T. Furman, Jr."
 The foregoing cases have been selected by counsel as typical of many others with which they are in harmony and they are sufficient for our use in pointing out what we consider to be the controlling fact in all of them. Under the Tooley and Mayne wills the persons to whom the respective requests were directed had nothing to do but to execute the desires of the testators which were complete in themselves. In the Marti case the widow was to devise one-half of the remainder of the property to the relatives of the deceased husband. In the Goldthwaite case the beneficiary was asked as a favor to the testator to give a part of the estate to "Mary." In each of the latter cases whatever, if anything, of the property disposed of by the will would eventually be received by the objects of the testator's solicitude would go, not by force of the will but by reason of the action of the beneficiary which the testator had sought to influence. In that respect the will before us is not to be distinguished in principle from the one in Estate of Marti, supra. The testator there expressly stated that he wished his wife to divide the remainder of the estate by will; in our case the same thing is necessarily implied. Under the Marti will the remainder was to go to the relatives of the testator, who were not named in the will. In our case the relatives of the testator were identified in the will, but the division was left to depend upon the volition of the wife, to be exercised according to her own desire.
 In determining what purpose the testator endeavored to express in his will, we should not overlook the feelings that he had toward his wife at the time he wrote the will, for it appears from his reference to her that his affection for her was great and his confidence in her complete. Considering these facts, words of suggestion to her would seem to be more consistent with his expressed regard for her than would words of command.
 If there were any doubt as to the proper construction of the will, we think it should be resolved in appellant's favor by reason of the provisions of section 104 of the Probate Code, which reads as follows: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by *382 an inaccurate recital of or reference to its contents in another part of the will." The provisions of the will upon which respondents rely as limiting the clear and distinct devise and bequest of the entire estate to the wife are not equally clear and distinct because they fail to show how the testator wished the estate to be divided. In leaving it within the discretion of the wife to give all of the remaining estate to the brothers and sister to the exclusion of the daughter, we think the testator not only did not make a clear devise or bequest in favor of any person except his wife but that he really made no provision at all. It necessarily results from what we have said that the construction given the will in the trial court was inconsistent with the intentions of the testator as expressed therein, that Ethel G. Cook took the entire estate under the will, and that distribution should have been made to her estate.
 In order to provide funds for payment of the legacies the court ordered the sale of certain corporate stocks, this being one of the terms of the order for distribution. Loretta Cook Kurtz appeals from that portion of the order, as well, and it must be reversed in view of our holding that the entire estate is distributable to the estate of Ethel G. Cook, widow of Frank J. Cook. It is unnecessary to consider the further contention of appellant that the court had no jurisdiction to make the order appealed from in the estate of Frank J. Cook instead of ordering distribution to the estate of Ethel G. Cook for further proceedings.
 The order for sale of property and decree of distribution are reversed with the direction that distribution be made to the estate of Ethel G. Cook, deceased.
 Wood (Parker), J., and Shaw, J. pro tem., concurred