[Civ. No. 3780.   Fourth Dist.   Apr. 18, 1949.]

Estate of JOHN LEWIS, Deceased.   LUELLA MARTIN, as Executrix, etc., Appellant, v. STANLEY RUSSELL KELLER et al., Respondents.

Calvin H. Conron, Jr., for Appellant.

Harvey, Johnston, Baker & Palmer for Respondents.

BARNARD, P. J.—This is an appeal from an order and decree construing the meaning of the dispositive provision of an holographic will.

The deceased, employed for many years as a stationary engineer, was a man with little formal education. He was 64 years old at the time of his death. In his will, dated August 4, 1941, he declared that he was not married and that he had no brothers or sisters, and he appointed Luella Martin "as Executor." The provision of the will which is here in question reads as follows:

"Fourth: I give, devise and bequeath all my property, real and personal, wherever situated, to be equeally divided between Luella Martin at Perris California. And Stanley Keller, Roy C. Keller and James L. Keller. All three live at Willowbrook California"

The will was admitted to probate, Luella Martin being appointed as executrix on July 30, 1947. On April 8, 1948, she filed a petition alleging that she was unable to close the estate because she was uncertain whether it should be distributed one-half to herself and one-sixth to each of the other named beneficiaries, or one-fourth to herself and one-fourth to each of the other three. It was further alleged that she believed the clear intent of the decedent, as disclosed by the will, is that one-half should be distributed to her and one-sixth to the other devisees, respectively, and the court was asked to determine the manner in which the estate should be distributed. The other three beneficiaries filed an objection to this interpretation of the will, and prayed that it be construed as requiring an equal distribution to the four persons named, one-fourth to each. After a hearing the court found in favor of the three objectors, construed the will accordingly, and entered an order decreeing that by the terms of the will the testator intended

that each of the four parties should receive one-fourth of his estate, and ordering that the property should be so distributed. From this order the executrix has appealed.

The appellant first contends that the will, on its face, indicates that the testator intended one-half of his estate to pass to her. It is argued that the use of the word "between" instead of "among" indicates an intention to divide the estate into two parts only; that the use of a period following the first "California" indicates an intention to make a definite cleavage in the distribution of the estate as between Luella Martin and a separate class consisting of the three Kellers; that the use of a capital A in the word "And" following that period, coupled with the use of the period, fortifies this conclusion; that the absence of the word "and" between "Stanly Keller" and "Roy C. Keller," from a grammatical standpoint, indicates an intention to connect the three into one group; that had the testator intended to put all four in an equal status he would have inserted an "and" at this point and omitted the period and the capital A; that he again refers to the three boys as one group when he says "All three live at Willowbrook California"; and that the fact that he named Luella Martin as executrix indicates that he believed she was the person most interested in seeing the will properly probated.

This appears to us to be a strained construction, especially since the deceased was admittedly a man with little school education. The use of the word "between" instead of the word "among" is quite commonly used when a division into more than two parts is intended, and the use of that word here is far from controlling. (*Estate of Morrison,* 138 Cal. 401 [71 P. 453]; *Estate of Rauschenplat,* 212 Cal. 33 [297 P. 882, 78 A.L.R. 1380].) The use of a period after the first "California," and the use of a capital A in "And" following that period, would not necessarily indicate an intention to make a definite cleavage between two separate classes of devisees. The photostatic copy of the will indicates that the testator was somewhat careless in the use of punctuation marks, a fact which would hardly distinguish him from many other people. While there is a period after the first "California" in the will there is no period after the second "California," where one should be, and there is a comma after the third "California" where there should be a period. It is not certain that the first letter of the word "And" following the first "California" was intended to be a capital A. That letter is very similar to the "a" in several other words

beginning with "a" which appear in other portions of the will, where the words are very clearly in the middle of sentences. The word "equally" is misspelled. The first part of the fourth paragraph, down to the period following the first "California," does not make a complete sentence. The same is true of the words which follow down to the period after "James L. Keller." Obviously, these clauses were intended to go together, which is inconsistent with the idea that separate classes were intended by the two incomplete sentences. Under such circumstances, the improper punctuation and capitalization, if any, should not be taken as controlling. (*Estate of Olsen,* 9 Cal.App.2d 374 [50 P.2d 70].)

▉ It would appear that any distinction made by the testator, as between Luella Martin and the other three beneficiaries, occurs because he was inserting the places at which they lived, respectively, and not because he intended to divide them into two classes. This view is supported by the fact that he provided that his property was to be "equeally divided between" four named persons. The fact that he later named one of the four "as Executor" is in no way suggestive that he thereby intended to give that person a greater interest in his estate.

▉ The interpretation given to this paragraph of the will by the trial court appears to be reasonable and consistent with the intent of the testator and, under well established rules, that interpretation may not be disturbed on appeal even though another interpretation is possible. (*Estate of Bourn,* 25 Cal.App.2d 590 [78 P.2d 193].)

The appellant next contends that the history and circumstances of the parties support the conclusion that the testator intended to give her one-half of his property, rather than an intention to give one-fourth to each of those named. The deceased lived with the grandmother of Luella Martin from the time he was 2 years old until he was about 12. From then until the time he was about 16 he lived with Luella Martin's mother. He was two years younger than Luella Martin, and admittedly felt friendly to her throughout his life. She saw him a few times after he left her mother's home and up to the time he came to the San Joaquin Valley, about 1920. Thereafter she did not see him again until 1946, although she wrote to him at times. After 1932, she did not know where he lived.

The testator was intimately acquainted with the respondents

from the time they were small children, beginning about 1920. They and their parents moved to Los Angeles soon after that, and the testator was in the habit of spending his vacations with them, and the boys visited him during their school vacations for many years. He took the boys on many fishing trips and other excursions. During the last war the boys, who were in the armed services, wrote to him frequently and came to see him when on leave. In 1937, the testator married the grandmother of the three boys and she died in 1940. This will was made the next year. If these surrounding circumstances are material here, they are as favorable to the court's conclusion as to the other interpretation, if not more so.

It is next contended that the court erred in refusing to consider certain written declarations of the deceased in interpreting the will. It is first argued that the court erred in refusing to admit in evidence two life insurance policies, carried by the testator, with the changes of beneficiary made in that connection. It appears that during the married life of the testator this insurance was payable to his estate. After his wife died the testator had one policy changed in favor of Luella Martin and the other changed to one of the three boys. Shortly thereafter, this second policy was also changed to name Luella Martin as beneficiary. These instruments were offered on the theory that had the testator intended that the boys should participate in his estate upon an equal basis with Luella Martin, they would have been designated as beneficiaries in the insurance policies as well as in the will. This contention is without merit. A will is to be interpreted by the language used therein rather than by the language of some entirely different instrument. (*Estate of Tompkins*, 132 Cal. 173 [64 P. 268].) It may also be observed that the fact that the value of the insurance policies had been given to Luella Martin might well cause the testator to give her a lesser, rather than a greater, interest under the will.

In a second instance, it is contended that the court erred in refusing to consider another writing as a part of the will. This writing is a memorandum headed ''Beneficiaries.'' Under that is the name Luella Martin, with her address. Under that is a line. Below the line appears the names of the three respondents, with their addresses at Willowbrook, California. This writing was delivered with the will to the clerk of the court. It was first offered by the appellant as an example of the decedent's handwriting and to show his manner of punctuation. It was admitted for that purpose. Later, it

was offered together with the will, "conjunctively as the last Will and Testament." An objection was sustained on the ground that it was not a part of the will. It was not signed by the testator and was not dated. Obviously, it was not a part of the will and the objection was properly sustained.

Finally, it is contended that the court erred in refusing to admit a former will executed by the testator and prepared by a lawyer. In that will he left his property to his wife and in the event of her death to her two children, one of them being the mother of the three respondents. That will had been revoked on the face thereof. It is argued that this will indicates that the deceased at no time intended that the three boys, as a group, should receive more than one-half of his estate since under that first will they would have indirectly succeeded to the one-half interest of their mother. The first will clearly discloses that the testator then intended to leave all of his property to his wife's family. Conditions had changed when the second will was executed as the testator's wife was dead and her daughter, the mother of the three respondents, had then remarried. Under these circumstances, it is only natural that the testator should make a different distribution of his property. While he then gave a portion to the appellant there is nothing in connection with the previous will which would indicate any intention, in executing the second will, to correspondingly limit the share which the three boys should receive. The previous will was not admissible for the purpose for which it was offered (*Estate of Vanderhurst*, 171 Cal. 553 [154 P. 5]), and no prejudice appears.

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 16, 1949.