[Civ. No. 18960.   Second Dist., Div. Two.   June 19, 1952.]

GAILEN STAFFORD COMSTOCK, Appellant, v. WARD E. CORWIN, Individually and as Trustee, Respondents.

Gordon J. Aulik for Appellant.

Lance D. Smith for Respondents.

MOORE, P. J.—Plaintiff Gailen Comstock has appealed from a judgment which determines (1) that he has only a life estate under the terms of a testamentary trust created by his father and (2) that he is not entitled to take from the trustee the properties constituting the corpus of such trust. The language creating the trust is as follows: "Said real property to be sold when there is a market and the *proceeds* invested in or loaned on good securities. The interest and *proceeds* to go to Gailen Stafford Comstock during his lifetime, and after his death to the heirs of his body in equal shares. Should said Gailen Stafford Comstock die without issue, then this trust estate shall be divided equally between said decedent's other children, or in case of the death of either of them, then the children of such deceased child shall take the portion that their parents would have taken had he survived." By virtue thereof, in December, 1935, the decree of distribution in the Estate of Andrew Comstock distributed to Ward E. Corwin, trustee, the real property to become the corpus of the trust. In 1947 the land was sold and the proceeds of sale were invested in certain corporate securities which subsequently constituted the trust estate.

Thereafter, plaintiff demanded of defendant that he petition the court for an order requiring defendant to deliver to plaintiff the corpus of the trust and on May 25, 1950, he commenced this action to enforce such delivery and for damages. The court below denied all relief to plaintiff and held that by the terms of the will Gailen Comstock is entitled during his lifetime to receive only the revenues derived from the trust estate. The sole question for decision is whether the trial court erred in its construction of the trust provision.

Appellant contends that immediately upon investment of the proceeds from the sale of the realty the trust was to terminate and the corpus was to go to appellant absolutely; that only in the event he should have deceased prior to the investment of such proceeds were the heirs of his body or others to acquire any interest in the trust res. In support of that construction it is argued:

That the word "proceeds" must be given the same meaning in both sentences where used in the declaration; that this meaning in the first instance can only be "everything that is received" from the sale of the realty; that the same definition must be given to its second use; that since the will by its terms gives both appellant and the heirs of his body the same interest in the testator's estate and since it is presumed that the testator intended to dispose of his entire estate, it necessarily follows that appellant is to receive the corpus; that the word "interest" as used in the will means appellant's interest *in* the corpus and has no reference to income earned by the trust assets.

The testator entertained no such intentions. He intended the second use of the term "proceeds" to refer to the revenues to be derived from the estate created by the investment of the moneys received from the realty. Such term is a "word of loose and varying significance" (*Kidwell* v. *Ketler*, 146 Cal. 12, 21 [79 P. 514]) and may have a variety of usages and meanings. For example, Funk and Wagnall's Standard Dictionary defines it in part as "product; return or yield," and in *Browning* v. *Ashbrook's Ex'r*, 175 Ky. 755 [195 S.W. 105, 108] where a testator's will gave his wife all the "proceeds" of his estate, the term was held to mean income. ■ It is true that a word or phrase occurring more than once in a will is presumed always to be used in the same sense (*Estate of Vogt*, 154 Cal. 508, 511 [98 P. 265]); but this rule is not applicable where the context clearly manifests an entirely different meaning. (*Ibid.*)

■ Therefore, the testator in his first use of the term "proceeds" could have meant only the money received for the realty, while in the second instance he could not have referred to anything other than the interest on, or other fruits of, the investments of the corpus of the trust estate. And from the instruction that the proceeds are to go to plaintiff during his lifetime and upon his death the corpus is to vest in the heirs of his body or the alternative ultimate beneficiaries, he sealed his purpose. Having "proceeds" of a fund to "go to Gailen . . . during his lifetime" could signify nothing but the payment of the revenue of the trust to the named beneficiary. Otherwise there would be nothing left for the "heirs of his body."

To adopt appellant's interpretation would render the concluding sentence of the trust provision surplusage and of no effect, for if "proceeds" be deemed to mean the corpus of the

trust, and if such corpus be immediately paid over to plaintiff, vesting legal and equitable title in him, there could be nothing but a memory to vest in the remaindermen referred to in the elder Comstock's will. Such construction would be tantamount to creating a new and different testamentary disposition from that manifested by the decedent.

It is the court's task in interpreting the language of a will to carry out the intent of the testator (Prob. Code, § 101) as expressed by the terms of the writing, but not to speculate as to how it existed in the testator's mind. (*Estate of Watson*, 32 Cal.App.2d 594, 598-599 [90 P.2d 349].) Therefore the trial court has adopted a reasonable and proper construction of the instrument. Where such reasonableness appears to the trial court and it is consistent with the intent of the testator, the appellate court will not substitute another interpretation even where a contrary construction may also be equally tenable. (*Estate of Bourn*, 25 Cal.App.2d 590, 600 [78 P.2d 193]; *Estate of Boyd*, 24 Cal.App.2d 287, 290 [74 P.2d 1049].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied July 9, 1952, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1952.