[Civ. No. 21173. Second Dist., Div. Two. Nov. 18, 1955.]

Estate of DONNA NORINE SCHUSTER, Deceased. DANIEL D. SCHUSTER et al., Respondents, v. JOHN B. SCHUSTER et al., Appellants.

*Assigned by Chairman of Judicial Council.

George Bouchard for Appellants.

Daniel W. Gage for Respondents.

FOX, J.—Decedent left a will, which she wrote, that reads as follows:

"August 31, 1929
2672 Glendower Ave.
Los Angeles, Calif.

"This is my one and only will in existence. Being of sound health and mind, but wishing to bequeath my effects in case of my death, to my loved ones, I hereby give to my Mother—Nora D. S. Danford—my house and lot at 2672 Glendower Ave. Los Angeles, my lot on West Third Street near the corner of Fairfax Ave. L.A. and any cash I may have at the time of my death.

"I hereby give to my sister—Helena K. S. Tuttle of Ontario Calif. my cottage and lot at Laguna Beach, Calif., and any pictures she may desire of my painting. I give to my niece—Leonora G. Tuttle my diamond and pearl ring and any pictures she may desire of mine. I give to my nephew George S. Tuttle—my turquois and diamond ring and any pictures he may desire of mine. I give to my brother Daniel D. Schuster of Milwaukee Wis.—my two diamond stone ring. Any and all the rest of my effects I give to my mother to distribute as she deems wisest.

"Signed—Donna Norine Schuster Aug. 31, 1929 Los Angeles, Calif."

The basic question is, considering the entire will of Miss Schuster, was the last sentence thereof, "Any and all the rest of my effects I give to my mother to distribute as she deems wisest," intended to be a bequest of the residuary estate, rather than a disposition of clothing, furniture, paintings and other purely personal items not specifically bequeathed? The trial court answered this question in the affirmative. We have reached the conclusion that the decision is correct.

At the time of her demise, Miss Schuster left surviving the following heirs at law:

(1) Daniel D. Schuster—a full brother;

(2) George S. Tuttle and Leonora G. [Tuttle] Caldwell, a nephew and niece, respectively, children of Helena K. S. Tuttle, who was a full sister of decedent and who predeceased her;

(3) Louise Greer, a half sister;

(4) John B. Schuster, a half brother.

The decedent, Daniel D. Schuster, and Helena K. S. Tuttle, are the children of George Schuster and his first wife, Nora D. S. Danford; Louise Greer and John B. Schuster are the children of George Schuster by his second wife.

Both George Schuster and Nora D. S. Danford predeceased their daughter, Donna Norine Schuster.

Prior to her passing Miss Schuster had sold the lot, mentioned in her will, on West Third Street. She still owned the other two pieces of real property. She had $7,438.45 in the bank. She also had certain of the jewelry and pictures specifically bequeathed. Since making her will in 1929 she had accumulated stocks valued at $11,684 and postal savings certificates amounting to $1,527. At the time of her passing there was salary due her from the Los Angeles Board of Education amounting to $216. Her furniture in the Laguna Beach property was valued at $80 and her two cars were appraised at $60. There is also in the estate the proceeds of insurance resulting from a fire which destroyed the major portion of the house on Glendower Avenue (and most of the furniture) where Miss Schuster lived. She perished in this fire. She also had some additional jewelry valued at $165.

Under the trial court's decision Miss Schuster's estate goes to her brother, and to her nephew and niece, children of her deceased sister. This appeal is taken by her half brother and half sister.

In the interpretation of a will, ascertainment of the testator's intention is the fundamental rule of construction, to which all others are subordinate. (*Estate of Salmonski,* 38 Cal.2d 199, 209 [238 P.2d 966]; *Estate of Lawrence,* 17 Cal.2d 1, 6 [108 P.2d 893]; *Estate of Klewer,* 124 Cal.App. 2d 219, 221 [268 P.2d 544, 41 A.L.R.2d 941]; Prob. Code, § 101.) In ascertaining such intention we naturally first look to the language used in the will. Here, at the very outset, Miss Schuster expressed an intention to dispose of her property by the will she was writing for she said she wished to bequeath her "effects" in case of her death to her

loved ones, whom she proceeded to name. The first-mentioned of her "effects" was undoubtedly her most cherished piece of property, her home. She gave that to her mother. The second item of her "effects" was a lot she then owned on West Third Street in Los Angeles. She gave that to her mother, too. The third item of her "effects" to be disposed of was "any cash I may have at the time of my death." That also went to her mother. The second paragraph of her will opens with a gift to her sister of the fourth item of her "effects," a cottage at Laguna Beach. This is coupled with a gift of any of her pictures her sister may desire. Then follow gifts of jewelry and "desired pictures" to her niece and nephew, and a gift of a diamond ring to her brother. In the final sentence of this paragraph she said: "Any and all the rest of my effects I give to my Mother to distribute as she deems wisest." It thus appears that in the first sentence of her will the testatrix used the same expression, "my effects," that she used in the concluding sentence.

While the primary meaning of "effects" is personal property, it is a very general term and may include real property where that appears to be the intent of the testator.

Whether it includes the latter class of property depends on the context of the will and the surrounding circumstances. (Anno., 80 A.L.R. 941.)

When Miss Schuster first used the expression "my effects" she obviously intended it in a broad sense—to include all her property—for in the same sentence she proceeded to dispose of two pieces of real property and whatever cash she might have at the time of her death, and in the very next sentence she gave her sister her "cottage and lot at Laguna Beach" and any of her paintings her sister might desire. When she used the same expression, "my effects," in the concluding sentence of her will it is a reasonable inference that she intended to use it in the same sense in which she had previously used it, for "a word or phrase occurring more than once in a will is presumed always to be used in the same sense." (*Comstock* v. *Corwin,* 111 Cal.App.2d 770, 772 [245 P.2d 654] ; *Estate of Vogt,* 154 Cal. 508, 511 [98 P. 265].) Of course, "this rule is not applicable where the context clearly manifests an entirely different meaning" (*Comstock* v. *Corwin, supra*), but a reading of this two-paragraph, holographic will does not disclose any indication that the testatrix used the expression "my effects" in different senses. The trial court, therefore, was justified in con-

cluding that in the use of the words "my effects" in the last sentence of her will the testatrix did not intend, as appellants argue, to include merely her clothing, furniture, paintings and other purely personal items not specifically bequeathed but, in fact, intended to dispose of her remaining property regardless of its character. That the testatrix intended to include all her undisposed of property is clearly indicated by the comprehensive language she used, viz.: "*Any and all the rest* of my effects . . ." (Emphasis added.)

There is a presumption that a testator intends to dispose of all of his property in the absence of controlling language in the will to the contrary. (*Estate of Akeley,* 35 Cal.2d 26, 28-29 [215 P.2d 921, 17 A.L.R.2d 647]; *Estate of O'Brien,* 74 Cal.App.2d 405, 408 [168 P.2d 432].) In construing the will it was proper for the trial court to take this presumption against partial intestacy into consideration. (*Estate of Akeley, supra; Estate of Lawrence, supra.*)

Also, the testatrix expressed an intention to leave her property "to my loved ones." She then proceeded to enumerate them, leaving something to each of the named relatives and ending her will by bequeathing "Any and all the rest" of her property to her mother. It is significant that the appellants are not mentioned. The interpretation placed on the final sentence gives full effect to the expressed intention of the testatrix. Her estate thus goes to such of her "loved ones," whom she mentioned in her will, as are still alive and none of it goes by intestacy to others.

There is some argument as to the character of the estate had passed under the residuary clause. The trial court took the view, as stated in its findings, that the last sentence of the will "constitutes an outright gift of the entire residue of the estate." This conclusion finds adequate support in the language the testatrix used ". . . I give to my mother . . ." But it is argued the concluding words "to distribute as she deems wisest" in some way limit the unconditional character of the gift. Such language clearly does not create a trust or a power of appointment, because none of the elements of a trust or a power of appointment, namely, an expressed intention, a beneficiary, or a purpose, is present. (Civ. Code, § 2221.) *Estate of Cook,* 58 Cal. App.2d 376 [136 P.2d 338], is apposite here. In that case the testatrix stated in her will that she gave all of her effects to Ethel, but on her death would like to have her brother and sister get a certain amount. The court stated (p. 378), quoting from *Estate of Marti,* 132 Cal. 666, 671

[61 P. 964, 64 P. 1071], that ''While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms.'' The words, ''I give to my mother,'' are positive and absolute. The language that follows is simply the daughter's way of emphasizing the idea that her mother was free to dispose of such property in whatever way she desired or thought best. Had a lawyer drafted this will he might well have advised that such language was unnecessary but it is understandable that a daughter, speaking to her mother in her last will, might desire to elaborate on this point so that her mother would feel no restraint in any disposition she might consider making of any portion of the residuary estate. In any event, this language does not limit the outright and absolute character of the gift, nor does it require a finding that the testatrix did not intend that all her undisposed of property should not be included in this residuary clause.

Appellants argue that the arrangement of the will indicates that the testatrix intended to dispose only of purely personal items by the last clause. They say that in the ordinary will a testator disposes first of his personal effects, such as clothing and jewelry, and then his more substantial assets, such as stocks and real estate. Under these circumstances, they argue, a residuary clause which has the effect of bequeathing a relatively large portion of the decedent's estate follows naturally. Miss Schuster's will reverses this order of disposition in that she first disposes of her real property and cash before she mentions her jewelry and paintings. From this ''reverse order'' appellants contend that the testatrix intended by the last clause of her will to dispose of items not previously disposed of such as her remaining paintings and other purely personal possessions not previously mentioned in her will.

Appellants' approach, however, overlooks the fact that this will was written by the testatrix herself. She started out dealing with the things and persons that meant most to her— her home and her mother. Obviously the desire uppermost in her mind was that her mother should have her most prized possession, viz., her home. She then gave her mother her vacant lot and whatever cash she might have upon her passing. It is thus clear that the testatrix was interested in giving

her mother the major portion of her property. Miss Schuster then gave her Laguna Beach cottage to her sister together with such of her paintings as her sister might want. Following these very substantial gifts she bequeathed items of jewelry and pictures to her niece and nephew and to her brother. Then appears the final sentence by which she gave "Any and all the rest of" her effects to her mother. In view of the relationship, and the testatrix' first consideration for her mother and desire to adequately provide for her, it is reasonable and natural she should intend that any property other than that which she had specifically willed should go to her mother. Certainly such an inference is more reasonable than one by which a substantial portion of her property would pass by intestacy to heirs at law whom she did not mention as being among her "loved ones." Thus the inference that appellants would draw from the arrangement of the will is largely, if not entirely, dissipated. Certainly the trial court was not required to draw such an inference. In fact, the arrangement reasonably justifies an inference in support of the trial court's construction of the will.

Appellants also argue that the specific bequests to the mother of the testatrix in the first paragraph of the will negates a residuary bequest to her of assets other than purely personal effects. This does not necessarily follow, particularly when the relationship and the mother's situation are considered. This will was made in 1929. The mother and father had been divorced 30 years previously. The mother had married Mr. Danford, who had passed away eight years before the testatrix made her will. While the mother's age does not appear, it is obvious that she was well along in years. Considering her mother's age and widowhood, it is a reasonable inference that the daughter desired her mother to have all her property except that which she specifically bequeathed to her brother, sister, niece and nephew. Certainly the trial court was justified in drawing such an inference in view of her mother's situation rather than a contrary inference, and, of course, we must indulge such reasonable inferences as will support the trial court's conclusion.

What we have just pointed out serves to answer appellants' further proposition that the failure of the testatrix to make any other provision for the disposition of the purely personal effects indicates that the residuary clause was intended to dispose only of such items. To sustain appellants' position

would result in a considerable amount of her property passing by intestacy. This, of course, is contrary to the presumption against intestacy. (*Estate of Akeley, supra.*) Furthermore, appellants' position is too legalistic and not sufficiently realistic in view of the mother-daughter relationship, the mother's circumstances, and the daughter's obvious desire to provide for her.

Appellants also argue that "the nature of the items bequeathed in the second paragraph indicate an intent to limit the scope of the last clause to purely personal items." They rely on the *"ejusdem generis"* rule which, they point out, simply limits the scope of an ambiguous term by the context in which it is used. They then argue that since the word "effects" is used in connection with the disposition of personal paintings and jewelry of relatively small value it must logically follow that by the use of this word only purely personal items not elsewhere disposed of are included in the residuary clause. The complete answer to this contention is found in the instrument itself. It is twofold: First, as we have previously noted, the word "effects" appears in the initial sentence of the will where the testatrix gave to her mother her home, her lot on Third Street and whatever cash she had at the time of her death. It is thus unmistakably clear that she uses the term in a very broad sense—to include all her assets. Then there is the inference that she used the word in the same sense when she used it again in the residuary clause. (*Estate of Vogt,* 154 Cal. 508, 511 [98 P. 265]; *Comstock* v. *Corwin,* 111 Cal.App.2d 770, 772 [245 P.2d 654].) The second phase of the answer lies in the character of the property disposed of "in the second paragraph" of the will to which appellants refer. It will be noted that the first item disposed of in that paragraph is the decedent's "cottage and lot at Laguna Beach." Thus the "second paragraph" disposes of both real and personal property. The *"ejusdem generis"* rule, therefore, does not appear to support appellants' conclusion.

Appellants rely on *Estate of Sorensen,* 46 Cal.App.2d 35 [115 P.2d 241], and a quotation therein from *Barney* v. *May,* 135 Minn. 299 [160 N.W. 790], in support of an argument that the language the testatrix here used should not include after-acquired stocks, her claim for unpaid salary and insurance resulting from the fire. There is absent here, however, a very significant word. In the Sorensen case the expression by the testatrix was "personal effects." The court there held that this language did not encompass a "large

residue of money and securities." The holding was obviously correct for such items would hardly be classed as "personal" effects. The absence of such qualification of the word "effects" renders the decision valueless in the instant matter.

 The construction of this will by the trial court appears to be reasonable and consistent with the intent of the testatrix. In such circumstances a reviewing court will not substitute a different interpretation though it may seem equally tenable. (*Estate of Sullivan,* 86 Cal.App.2d 890, 894 [195 P.2d 894]; *Comstock* v. *Corwin, supra,* p. 773; *Estate of Lewis,* 91 Cal.App.2d 322, 325 [204 P.2d 898]; *Estate of Bourn,* 25 Cal.App.2d 590, 600 [78 P.2d 193]; *Estate of Halsell,* 133 Cal.App.2d 665, 670 [284 P.2d 821].)

The judgment is affirmed.

McComb, Acting P. J., and Ashburn, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.