[Civ. No. 20040.   Second Dist., Div. One.   Mar. 31, 1954.]

MARILYNN BOCHTE, Appellant, v. MORRIS CHESS, as Administrator, etc., et al., Respondents.

Henry C. Rohr for Appellant.

Harry A. Pines and Adele Walsh for Respondents.

WHITE, P. J.—Plaintiff appeals from a judgment for defendants entered after demurrers to plaintiff's complaint were sustained without leave to amend.

Plaintiff is the daughter, and residuary devisee under the will, of Melba Meeker, deceased. As is set forth in the complaint, the decedent by her will, after making certain specific bequests, directed that her 18-acre grapefruit grove be disposed of as follows:

"I give and bequeath my eighteen acre grapefruit grove, located on Wilbur Avenue, Northridge, California, to Myer W. Chess, now residing at the Knickerbocker Hotel, Hollywood, California, in trust, to hold, however, for the following purposes:

"That he pay one hundred ($100.00) dollars per month to my mother, Nannie Joslyn, during her lifetime, and that at her death he pay her funeral expenses, and that at the death of my mother the said eighteen acre grove to become the sole property of Myer W. Chess."

Plaintiff's complaint is denominated "Petition for Determination of Heirship and to Quiet Title to Real Property." In the first cause of action it is alleged that Meyer Chess (named as trustee in decedent's will) died intestate in May, 1952, and that defendant Morris Chess was appointed administrator of his estate; that in the probate proceedings had in the estate of Melba Meeker, in June, 1946, a decree of distribution was entered which included the following reference to the real property here in dispute:

"The real estate described as follows: . . . is hereby distributed to Meyer W. Chess in trust for the following purposes: That he pay $100 per month to Nannie Joslyn during

her lifetime and at her death he pay her funeral expenses and. at the death of said Nannie Joslyn said real estate shall become the sole property of Meyer W. Chess. It is ordered by the court that the said trustee protect the said property during the lifetime of Nannie Joslyn against all liens, including taxes, and that the title to the said property remain in Meyer W. Chess in trust for the purposes above set forth.''

It is further alleged that pursuant to the decree of distribution Meyer W. Chess ''began operating as trustee and continued to act in said capacity until the date of his death on the 25th day of May, 1952. That on the date of the death of Meyer W. Chess, Nannie Joslyn was living and is now alive.'' It is then alleged that the defendants (the surviving brothers, nephew and niece of Meyer W. Chess and a nephew and niece of decedent Melba Meeker) claim an interest in the real property and that ''the rights of such persons so claiming an interest in said real property have not been determined by any court of competent jurisdiction.''

By the second cause of action it was alleged that defendant Morris Chess, as administrator of the Estate of Meyer W. Chess, has taken possession of the real property and claims the same as part of the estate of Meyer W. Chess; that said claim of the administrator is without right; ''that plaintiff herein as the surviving daughter is entitled under the residuary clause of the will of Melba Meeker, deceased, her mother, to the immediate possession of said real property as her sole and separate estate. That whatever title Meyer W. Chess, deceased, held was only as trustee and upon his death with the life tenant Nannie Joslyn surviving him, said real property became part of the residuary estate of Melba Meeker, and pursuant to Paragraph SIXTH of the will as referred to hereinbefore was devised to the plaintiff.'' (The Paragraph Sixth referred to was the residuary clause leaving the residue of the estate to the plaintiff.)

In the prayer of the complaint plaintiff asked for a decree determining her rights in accordance with the theory set forth in the last above-quoted portion of the complaint.

The demurrer of Morris Chess, individually and as administrator of the Estate of Meyer W. Chess, was sustained without leave to amend. Subsequently, the demurrer of the remaining defendants was sustained without leave to amend, the minute order noting: ''Plaintiff requests leave to amend as against all defendants to set forth the intent of the testatrix. Leave is denied.''

Appellant contends, first, that the court abused its discretion in denying leave to amend; second, that the will is ambiguout "as to the estate for the life of the mother" and the ambiguity may be cured by extrinsic evidence in order to ascertain the true intent of the testatrix; that a true trust was not created, but that the interest of Meyer W. Chess was a contingent remainder which never vested because he died before the happening of the contingency, to wit, the death of Nannie Joslyn.

The contentions of appellant are untenable. So far as her action purports to be an attack upon the interpretation of the will by the superior court sitting in probate, such attack is futile. Section 738 of the Code of Civil Procedure, provides in part that in an action to determine adverse claims to real property involving the validity or interpretation of any gift, devise, bequest or trust under a will or purported will, "if the said will shall have been admitted to probate and interpreted by a decree of the superior court sitting in probate which decree has become final such interpretation shall be conclusive as to the proper construction of said will, . . ."

The decree of distribution herein constituted a final and conclusive construction of the will as against all interested parties. (*Estate of Van Deusen*, 30 Cal.2d 285, 290 [182 P.2d 565], and authorities therein cited.)

The argument that a true trust was not created because of the uncertainty or lack of provision, in the will as to the disposition of the income of the property should it exceed the amounts required to be paid by the terms of the trust, is of no avail to appellant. The validity of the trust was determined finally by the decree of distribution. (*Hamilton* v. *Ferrall*, 92 Cal.App.2d 277, 281 [206 P.2d 663].)

Moreover, appellant has no standing to urge ambiguity or uncertainty in the testatrix' language, for the reason that appellant has no interest in the trust property, whether the devise be viewed as a trust or as a devise subject to a lien or charge in favor of the testatrix' mother during her lifetime. We are in accord with the statement in respondents' brief that "it is unequivocally clear that she (testatrix) intended to convey the property to Meyer W. Chess, subject to an equitable lien or charge in favor of Nannie Joslyn. It is the type of estate which is thoroughly reviewed in the case of *Woodley* v. *Woodley*, 47 Cal.App.2d 188 [117 P.2d 722]." The language of the will is clear, that upon the death of Nannie

Joslyn the land was to become the sole property of Meyer W. Chess. The estate devised to Meyer W. Chess was not, as appellant contends, a contingent remainder which failed when he died prior to the event which would terminate the prior limited estate, but was an indefeasible vested remainder.

■ "When an otherwise effective conveyance of either land or a thing other than land creates one or more prior interests, the maximum duration of which is measured by lives, or by years, or by a combination of lives or years, and then provides, in substance, that upon the expiration of such prior limited interests, the ownership in fee simple absolute of the land, or the corresponding interest in the thing other than land, shall belong to a person who is presently identifiable, such person has an indefeasibly vested remainder." (Rest., Property, § 157, com. h, p. 548.) In many cases involving testamentary dispositions similar to the one here involved and in which the residuary devisee was able to present a much stronger argument for the view that the estate in remainder was not a vested one, the courts have held that a vested estate was created. (See *Estate of Welch,* 83 Cal.App.2d 391 [188 P.2d 797], where trust property was to be conveyed to a grandson upon reaching the age of 25, but the grandson died before attaining that age; also *Estate of Riemer,* 69 Cal. App.2d 634 [159 P.2d 677]; *Miller* v. *Oliver,* 54 Cal.App. 495 [202 P. 168]; *Estate of Rider,* 199 Cal. 724 [251 P. 799]; *Estate of Norris,* 78 Cal.App.2d 152 [177 P.2d 299]; *Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094], where the court relied upon the above quoted passage from the Restatement.) As pointed out by respondents, consistent with the presumption in favor of the immediate vesting of estates, the courts have construed words of seeming futurity as relating to deferring possession rather than postponement of the vesting of title. Thus the words "shall be transferred and distributed" in *Estate of Dunphy,* 147 Cal. 95 [81 P. 315]; "be divided" in *Estate of Heywood,* 148 Cal. 184 [82 P. 755]; "shall pass to and vest" in *DeVries Estate,* 17 Cal.App. 184 [119 P. 109]; and "shall vest" in *Randall* v. *Bank of America,* 48 Cal.App.2d 249 [119 P.2d 754], were all treated as not being inconsistent with the immediate vesting of title.

There was no abuse of discretion in denying leave to amend to allege the intent of the testatrix. ■ The interpretation of the will is not governed by what the testatrix intended to say, but what she intended by what she did say (*Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629 [218 P. 14]). Any un-

certainty as to the details of the management of the trust or the disposition of its income or the duties of the trustee or remainderman are of no moment here, for the language of the testatrix is clear and unequivocal, affording no ground for admission of evidence as to her intent, so far as concerns the absolute vesting of title in Meyer W. Chess. Moreover, as heretofore stated, the matter was conclusively determined by the decree of distribution. (*Hamilton* v. *Ferrall, supra; Federal Farm Mtg. Corp.* v. *Sandberg,* 35 Cal.2d 1 [215 P.2d 721].)

For the reasons stated, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.