[Civ. No. 17017. First Dist., Div. One. Dec. 14, 1956.]

Estate of BERTHA K. NEWMAN, Deceased. PARKER N. HOWARD, Appellant, v. WELLS FARGO BANK as Trustee, etc., et al., Respondents.

Chas. N. Douglas for Appellant.

Heller, Ehrman, White & McAuliffe, W. M. Pinney, Jr., George Devine, Carlisle D. Nielsen and Guernsey Carson for Respondents.

WOOD (Fred B.), J.—The testatrix created a trust the terms of which as expressed in the decree of distribution (rendered in 1942 and long since final) were as follows: "To

pay the net income thereof unto Bertha C. Howard until her death; at the death of said Bertha C. Howard the trust shall terminate and the trust estate shall vest in and the trustee shall pay, transfer and deliver the same unto Rachel F. Anderson, Edith A. Bonner and Parker N. Howard in equal shares.''

Each of these beneficiaries survived the testatrix but two of the remaindermen (Anderson and Bonner) predeceased the life tenant. Parker Howard is the sole surviving remainderman.

 The question is whether these estates in remainder vested upon the death of the testatrix and creation of the trust or were contingent until termination of the trust upon the death of the life tenant.

This question was presented to Honorable T. I. Fitzpatrick shortly after termination of the trust in 1954. He determined that Anderson, Bonner and Howard ''each had at the death of the . . . testatrix . . . an indefeasibly vested remainder in the trust . . ., and that the portion of the remainder payable to the deceased remaindermen should go to their respective personal representatives for the purpose of administration.''

This appears to us a reasonable interpretation and we see no basis for our undertaking to disturb it. Each of the remaindermen was in being at the inception of the trust period and the will as expressed in the final decree indicated no intent upon the part of the testatrix to terminate any remainderman's interest by anything that might subsequently occur, such as the death of the remainderman during the period of the trust. This seems to fit the legislative formula declared in section 694 of the Civil Code: ''A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest''; aided by the declaration in section 28 of the Probate Code that testamentary dispositions ''are presumed to vest at the testator's death.'' We conclude that the words ''shall vest'' as used in this decree refer to the time of enjoyment, the right to possession, of the property, not to the vesting of title.

The case law lends support to this view. In *Keating* v. *Smith*, 154 Cal. 186 [97 P. 300], the decree of distribution distributed the residue of the estate to Alfred Vincent Keating and declared that, upon termination of the trust, the property ''then to go as follows, to wit: One third thereof to Isabell

Keating, the widow . . ." (P. 189.) In holding this a vested, not a contingent remainder, the court said: "The question resolves itself primarily into one of construction. Did the terms of the decree of distribution establish in the widow a present interest, which could pass, upon her death, to her heirs or devisees? By the provisions of the clauses above quoted, one third of the residue is, upon the termination of the minority of the children, to go to the widow. Her right to the possession of the principal of this third is postponed, but, under the language of the decree, she is to receive it in any event. Except in regard to the time when it may come into her possession, there is no uncertainty. The gift is not made contingent upon the occurrence or non-occurrence of any event whatever. There is no gift over in the event of her death, as there is in the case of the minor children. Furthermore, she is, during the existence of the trust, to receive one third of the income of the property.

"That, at common law, this provision for the wife would have been regarded as creating in her a vested estate, and that, in the absence of statutory rule to the contrary, such estate, whether legal or equitable, would pass from her by inheritance or devise, are propositions that are not, and cannot be, questioned. (1 Jarman on Wills, 6th ed., 756 et seq.; 28 Am. & Eng. Ency. of Law, 2d ed., p. 933.) Nor is it disputed that, under our code, the estate or interest of the wife, if she took any interest or estate, vested at once. (Civ. Code, § 694.)'" (Pp. 191-192.)

In *Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094], the "final decree of distribution entered in decedent's estate followed closely the provisions of his will concerning the creation of a trust and the payment by the trustee of the net income from the trust property to decedent's widow and two daughters, and further provided: 'Upon the death or remarriage of said widow, the said trust shall terminate and said trustee ,*shall distribute* (italics added) the balance remaining in said trust fund to the two above-named daughters of decedent, in equal proportions, share and share alike.'" (P. 339.) One of the daughters died during the period of the trust. The trial court and the District Court of Appeal held that hers was a contingent interest; the Supreme Court, that it was vested. After discussing *Estate of Dunphy,* 147 Cal. 95 [81 P. 315], and other authorities, the Supreme Court said: "Here, by the decree of distribution there was created a prior interest in the trustee, measured by the widow's life for a

period of years terminating with her remarriage, for the purpose of paying over the income as designated, and upon the expiration of such prior limited interest, the absolute ownership was to pass to then identifiable persons (testator's two daughters); hence each daughter, under the decree of distribution, by the application of the above stated rule and illustration acquired an indefeasible *vested remainder* which did not lapse upon the death of either daughter prior to the expiration or termination of the prior limited estate in the trustee.'' (P. 342 of 11 Cal.2d.)

In *Randall* v. *Bank of America,* 48 Cal.App.2d 249 [119 P.2d 754], a declaration of trust which stated that upon the death of the trustor (lifetime beneficiary) all unpaid principal and interest ''shall vest in'' a certain designated person, created a vested, not a contingent remainder. The court said: ''It is not inconsistent with a present transfer of interest that the words 'shall vest' are used. In *Kinney's Estate* v. *Commissioner of Internal Revenue,* 80 F.2d 568, the trust instrument provided that 'Upon the termination of this trust . . . the title to the whole of said property, so held in trust, shall immediately vest in the above named beneficiaries by title absolute. . . .' One of the beneficiaries died before the termination of the trust and the question arose whether her beneficial interest was taxable as an asset of her estate. The court determined that a present estate passed upon the creation of the trust and said:

'' 'It is contended that the trustor intended the trust property to vest in the beneficiaries at the termination of the trust, and not before. ''But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the *cestui* may be made to commence in the future and to depend for its commencement upon the termination of an existing life or lives or of an intermediate estate.'' (*Nichols* v. *Emery, supra,* 109 Cal. 323, at page 330 [41 P. 1089, 1091, 50 Am.St.Rep. 43].)

'' 'Having in mind these rules and the California Code provisions, we are brought, after study of the declaration of trust, to the conclusion that the legal title to the remainder vested at once in the beneficiaries, and that possession was to vest in them at the termination of the trust.'

''Without extending the discussion further as to the effect of the words 'shall vest' we refer to *Gray* v. *Union Trust Co.,* 171 Cal. 637 [154 P. 306], *Miller* v. *Oliver,* 54 Cal.App. 495 [202 P. 168], and *In re De Vries,* 17 Cal.App. 184 [119 P.

109], supporting the existence of a vested remainder even though enjoyment is postponed and even though the power of revocation or substitution might divest the beneficiary at any time of the right to possession which otherwise would upon the trustor's death pass to him.'' (Pp. 254-255 of 48 Cal.App.2d. See also the discussion in *Bochte* v. *Chess*, 124 Cal.App.2d 321, at 325 [268 P.2d 493].)

*Rhoda* v. *County of Alameda*, 134 Cal.App. 726 [26 P.2d 691], is readily distinguishable from our case upon the ground that the testator expressly provided for a gift over of the share of any remainderman who died during the life tenancy.

*Estate of Easter*, 24 Cal.2d 191 [148 P.2d 601], is not so readily distinguishable. In analyzing the Easter case we start with the consideration of *a combination of several factors*: (1) a decree of distribution, not a will, was being interpreted, (2) a class or group[1] was involved, not specifically named persons, and (3) words of futurity were used. The pivotal point of difference between that case and the instant case appears in item (2), for in the instant case specifically named persons (not a group or class) are involved. In the Easter case, the ''decree of distribution, dated October 3, 1923, set forth directions for administering the trust and provided that *'Upon the death of the said Catherine Easter*, the trust hereinbefore referred to shall terminate and *all of the property* then in the hands of the trustee or in its possession or control, *shall go to and vest in* the heirs at law of the said Alfred Easter, deceased, in accordance with the statute of succession of the State of California in force in the month of March, 1920, and the trustee is directed to convey, deliver and pay over all the corpus of said trust funds then in its possession or under its control unto such heirs in accordance with the statute of succession of the State of California in force in the month of March, 1920.' (Italics added.)'' (P. 193.)[2]

The testator died in February, 1923, leaving his wife and his four children as his heirs. The widow died in 1942. Two of the children predeceased her; two survived her.

The crucial question was ''whether the identity of the 'heirs at law' (who were to take on termination of the trust) is to

---

[1]Some of the factors to be considered when a gift is to a class instead of to specifically designated persons, are mentioned in *Estate of Clark*, 64 Cal.App.2d 636, 641-642 [149 P.2d 465].

[2]The will, executed in March, 1920, expressly adopted ''the present statute of succession'' for the indicated purpose. (P. 192 of 24 Cal.2d.)

be determined as of the time of death of the testator or the time of termination of the trust." (P. 193.)

The decree of distribution controlled as the final and conclusive adjudication of the testamentary disposition which the deceased made of his property. The use of words of futurity are especially significant in a decree in contrast to their use in a will. "From their nature, wills are made to take effect at a future time, i. e., at the death of the testator, and hence it may be proper to construe the future tense when used in a will as applying to the time of the testator's death, and not to a still later time. A decree of distribution, on the other hand, normally speaks as of its own date, for it is usually an order for the present delivery of property, and the use of the future tense must ordinarily connote future action. In our opinion, such was the intention here." (Pp. 195-196.)

In short, at the time of the rendition of the decree, the time as of which the decree spoke, the identity of the "heirs" of the testator (determined as of the date of his death) was known. If the court had them in mind as vested remaindermen it could readily have mentioned them by name or as heirs already ascertained. It did not do so. Instead, it referred to them simply as "heirs" without any description except that which the words of futurity connoted: "Upon the death" of the life tenant all the property "shall go to and vest in" the "heirs . . . of . . . Alfred Easter, . . . in accordance with the statute of succession . . . in force in the month of March, 1920."

Those words were used in 1923. They fell considerably short of determining who the "heirs" were, a determination which it was the duty of the writer of the decree to make if in his opinion the will created vested remainders.[3] Consonant with the opposite opinion (the view that these were contingent remainders) the writer of the 1923 decision refrained from any attempt to identify the "heirs" at that time and by his words of futurity inferentially said they would include only those persons who might be in being and able to qualify as heirs upon the termination of the trust.

If this is a correct view of the holding in the Easter case, it would seem to follow that that holding does not preclude the interpretation we have placed upon the dispository words of the decree of distribution in the instant case: The ascer-

---

[3] In this connection, we note particularly the quotation from *Luscomb* v. *Fintzelberg*, 162 Cal. 433, 438 [123 P. 247], which appears on pages 194 and 195 of 24 Cal.2d.

tainment and designation of three specifically named individuals (not the mere mention of a class whose members, inferentially, are yet to be determined), aided by the declaration made in section 694 of the Civil Code, the presumption expressed in section 28 of the Probate Code, and the supporting authorities which we have cited.

If we were in doubt as to the meaning of the decree, that doubt could and would be resolved by reference to the will itself, which declared: "At the death of Bertha C. Howard, the trust shall terminate and the amount distributed equally among the following: Rachel F. Anderson, Edith Bonner . . . and Parker Nelson Howard . . ." This formula is so like that involved in *Estate of Wallace, supra,* 11 Cal.2d 338, as to leave no doubt that these were vested remainders.

█ Appellant has also advanced the argument that the gifts to Anderson and to Bonner lapsed because of the provisions of section 92 of the Probate Code, a point not well taken because that section applies only if the devisee or legatee "dies during the lifetime of the" testatrix. Bonner and Anderson, as well as the appellant, survived the testatrix.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied January 10, 1957, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1957.