[Civ. No. 9704. Third Dist. Nov. 30, 1959.]

Estate of JACOB EARL TAYLOR, Deceased. EARLINE (TAYLOR) MARTIN et al., Appellants, v. PAT KELLEY, Respondent.

John D. Goodrich for Appellants.

Frank W. Shuman for Respondent.

VAN DYKE, P. J.—This is an appeal from a decree determining that all of the property owned by Jacob Earl Taylor when he died on June 30, 1957, vested in his stepdaughter, Pat Kelley, except for five specific bequests of $1.00 each to his three daughters, appellants herein, and to three stepdaughters, including Pat Kelley, respondent. During the probate of Taylor's estate, appellants petitioned the court for an order determining their interest in their father's estate, and from the ensuing decree they take this appeal.

Taylor's holographic will reads as follows:

(face side of document)

"this is my last will on
April 18th 1957
I Jacob Earl Taylor

| | |
|---|---|
| leaves to Earline Taylor | 1.00 |
| Imogene Taylor | 1.00 |
| Lois Taylor | 1.00 |
| Lela Wilson | 1.00 |
| Ila Harrs | 1.00 |
| Pat Kelly | 1.00 |

this is my last will

Jacob Earl Taylor"

(reverse side of document)

"the house hole furnishing and lot Ranch at Olinda
Cash in Bank & Lots pick up car goes to my Step
Daughter Pat Kelly She will take th will take
care of what I have told her. I have told her
I am in my right mind I Sign

Jacob Earl Taylor"

At the time Taylor made his will his property consisted of a ranch at Olinda, which was subject to a contract of sale, a bank account, a home in Anderson, household furniture, and a pickup truck. After making his will he sold his home in Anderson for $12,000. Out of the proceeds of sale he purchased a house and lot in Redding, paying $6,000 therefor. The balance he deposited in a savings account in the Bank of America. After making his will he received the balance of the purchase price of the Olinda ranch and conveyed the property to the purchaser. When he died his property consisted of the house and lot in Redding, the savings account, approximately $4,000 in a checking account, household furniture, and a pickup.

Appellants contended in the trial court, and here contend, that by his will Taylor made a specific bequest of his home in Anderson to Pat Kelley, then sold the property, purchased the house and lot in Redding and deposited the balance of the proceeds in the bank; that these acts on his part effected an ademption of the specific bequest, that the proceeds therefore remain undisposed of by his will and fall into his residuary estate; that since appellants are his only heirs at law, his death vested title in them. Appellants further contended in the trial court, and here contend, that Taylor's will must be construed as an attempt on his part to devise property to Pat Kelley in trust with no intention that she should profit personally by the bequest but should take the property as trustee only; that Taylor's intention to create a trust was ineffectual because he said nothing in his will to indicate the purpose of the trust or the beneficiaries thereof; that therefore the trust failed, with the result that the corpus of the intended trust passed into the residue of his estate and vested in them.

It is apparent from the reading of Taylor's will that it was inartificially drawn. ▮▮▮ The intention of the testator is not clearly expressed. The trial court properly received evidence of facts and circumstances attending its execution as an aid to its interpretation. ▮▮▮ For instance, the will spoke of "lot Ranch at Olinda" and of "lots." It contained no specific description of the only real estate wholly owned by the testator when he made the will, the house and lot in Anderson which was his home. If he made a specific bequest of that property, as is claimed by appellants, then the conclusion must be arrived at by considering that the term "lots" encompassed it. There was testimony that Taylor, at all times, designated and referred to real property, whether improved or

unimproved, as "lot" or "lots"; that he referred to the Anderson property and the house and lot he purchased in Redding in that manner. Said one witness: "Whether it was his lot or the next door neighbor's, or somebody's that was driving by, he always referred to anything, any property as a 'lot' or 'lots.' Never referred to it as a home, even his house in Anderson, when he had that, it was always 'lots.' " The trial court construed the devises to Pat Kelley as carrying, and as being intended to carry, all his property not specifically disposed of by the $1.00 bequests. It was shown that, interpreting the word "lots" as meaning real property, the whole of his property was given to Pat Kelley. When he made his will his property was his household furniture, his equity in the ranch at Olinda (described as "lot Ranch at Olinda"), his cash in bank, his pickup, and his home in Anderson (described as "lots"). He gave it all to Pat Kelley. Taking the will now, speaking as of the time of death, it disposed of his cash in bank, his real property, his pickup car, and his household furniture. That was all of which he died possessed. The will gave it all to Pat Kelley. Nothing was left undisposed of.

The court found that there had been no lapse or ademption and that by his will Taylor intended to and did leave all of the property he possessed, or to which he had the right of testamentary disposition at the time of his death, to respondent Pat Kelley, except for the $1.00 specific devises. This interpretation of the will is a reasonable one when the will, the facts and circumstances attending its execution, and the acts of the testator up to the time of his death, are all considered. Upon this record the construction of the trial court is sufficiently supported and must stand.

██ Parol evidence is admissible to show the circumstances surrounding a testator at the time of the execution of his will as an aid to its interpretation where its provisions are uncertain. (*Estate of Carrillo*, 187 Cal. 597 [203 P. 104].)

██ Facts relating to decedent's fortune, family and affections afford reliable proof not only in respect to issues as to existence of testamentary intention, but also with respect to controversies as to persons who are intended to be the objects of bounty and the extent of benefits intended to be bestowed. (*Estate of Swan*, 5 Cal.2d 635 [55 P.2d 1171].) ██ Where a will appears ambiguous and evidence is admitted to show the testator's intention, a trial court's inferences, conclusions and findings from the admitted evidence have the same weight as a trial court's factual findings in other actions and will

not be disturbed by an appellate court unless contrary to inferences a reasonable mind might properly draw from the evidence. (*Estate of Boyd,* 24 Cal.App.2d 287, 290 [74 P.2d 1049].)

 What has been said as to the effect of the trial court's construction of the will is largely applicable to the resolution of appellants' contentions that Taylor attempted to set up a trust which failed for want of a statement as to purposes and beneficiaries. The trial court specifically found that he made no attempt to set up a trust. Much reliance is placed by appellants upon the statement in the will that "She will take care of what I have told her." If we assume that this language might support a finding of an attempt to create a trust, still such a conclusion is not compelled by the language used. It may be that he had told her to bury him in some particular manner or place. Pat Kelley testified that what Taylor had told her was that he wanted a good funeral, wanted to be buried beside her mother, and that he wanted a suitable marker on the grave. We are not concerned with the challenged admissibility of this testimony. We refer to it for illustrative purposes only. The findings that he intended to devise the property to Pat Kelley and did not intend to create a trust are supported by the record and must stand.

The order appealed from is affirmed.

Peek, J., and Schottky, J., concurred.