[Civ. No. 25865.   Second Dist., Div. One.   June 6, 1962.]

Estate of JOHN W. DOODY, Deceased. DOROTHY WALSH DOODY, Petitioner and Respondent, v. JAMES R. WHITE, Objector and Appellant.

James R. White, in pro. per., and Tarbox & Jue for Objector and Appellant.

Ernest C. Griffith, Oscar W. Fehsel and Gilligan & Pratt for Petitioner and Respondent.

FOURT, J.—This is an appeal from a decree ordering preliminary distribution whereby appellant's objections to the preliminary distribution of certain government bonds were overruled and the court ordered, adjudged and decreed that the "... property be, and the same is hereby, distributed to DOROTHY WALSH DOODY, widow of decedent, as a portion of the estate of decedent to which she is entitled, . . ."

A résumé of some of the facts is as follows:

On December 22, 1959, the will of John W. Doody was filed and on January 19, 1960, was admitted to probate. Paragraph FIFTH of said will provides in pertinent part as follows:

"FIFTH: I give to my wife, DOROTHY WALSH DOODY, if she survives me:

"(a) My two (2) Series E, United States Savings Bonds, which each have a maturity value of $10,000.00; . . ."

The inventory and appraisement was filed June 17, 1960, and shows the following in pertinent part:

"BONDS:

"The following UNITED STATES OF AMERICA SAVINGS BONDS, Series 'E':

"Eight (8) $1,000.00 Bonds, issued January, 1950. . . .

"Four (4)          500 Bonds, issued January, 1950. . . ."

On September 23, 1960, respondent filed her petition for preliminary distribution whereby she sought distribution of the above bonds.

On October 18, 1960, Thomas Brady White and James White filed their objections to petition for preliminary distribution. Therein the following is set forth in part:

"Objectors' grounds for objection to said Petition for Preliminary Distribution are as follows:

"1. Objectors are the residuary legatees under Paragraph EIGHTH of the Last Will . . . .

"2. Under the terms of Paragraph EIGHTH of the Last Will* . . . the eight (8) $1,000 Bonds and the four (4) $500 Bonds should be distributed to objectors.

---

*Paragraph EIGHTH provides:
"EIGHTH: I give, devise and bequeath all the residue of my estate, both real and personal and wherever situated, including all lapsed and failed legacies and devises as follows:

"3. Under Paragraph FIFTH (a) of the Last Will . . . petitioner [i.e., respondent] is not entitled to any distribution for the reason that there were no bonds answering the description of the bonds mentioned in said Paragraph FIFTH (a).

"4. At the time of decedent's death, testator did not own two (2) Series E United States Savings Bonds, each of which had a maturity value of $10,000.

"5. That the eight (8) $1,000 Bonds and the four (4) $500 Bonds listed in the inventory in decedent's estate were not specifically bequeathed, and therefore should be distributed to objectors who are the residuary legatees under Paragraph EIGHTH of decedent's Will."

At the hearing decedent's will and the inventory and appraisement were introduced in evidence; also, a certificate of the United States Treasurer showing bonds issued in the name of decedent, as owner, at the address of 222 South Occidental Boulevard, Los Angeles, for the period from May 1941 to November 1959. This certificate showed that there were 22 bonds, one group of ten $1,000 bonds issued in July 1948, and another group of eight $1,000 bonds and four $500 bonds issued in January 1950.

No objection was made to the reception in evidence of the will or inventory, and an express disclaimer of objection was made to the treasury certificate, a reservation being made only as to its weight.

The respondent testified that she married decedent on March 3, 1945; that this marriage was the first marriage of each; that there were no children the issue of such marriage; that they resided from 1946 to the time of decedent's death at 222 South Occidental Boulevard; that she and decedent lived together continuously during their married life, and that it was a happy marriage.

Respondent further testified that she was present when the safe-deposit box was opened following the death of decedent; that it contained one group of ten $1,000 government bonds which were issued in July 1948, and were payable on death to respondent. There was also a second group of bonds consisting of eight $1,000 and four $500 bonds. This latter group was issued in 1950.

Over objection respondent testified: "My husband referred

"(a) Two-thirds (⅔) thereof to my nephew, THOMAS BRADY WHITE; and

"(b) One-third (⅓) thereof to my nephew, JAMES WHITE; or the survivor of them."

to those bonds as, 'my $10,000 bonds,' or 'my two $10,000 bonds.' '' She further testified that she did not know of decedent's ever having owned or having a $10,000 single-issue government bond and that there were no bonds at their home.

The objectors called one witness, the executor and non-appealing residuary heir, Thomas Brady White. He testified that he had made a search for two $10,000 bonds and had not found any such bonds; that the search and investigation he made to ascertain whether there were other bonds (i.e., any bonds other than the two groups of bonds mentioned above) consisted of a letter to the Treasury Department requesting their knowledge as to whether there were two $10,000 bonds, and an examination of the contents of the safe-deposit box.

On April 17, 1961, the findings of fact and conclusions of law were filed. It is therein set forth in pertinent part as follows:

"I

". . . the petitioner Dorothy Walsh Doody is the surviving widow of the . . . decedent, and is a legatee under his Last Will . . . duly admitted to probate herein, and as such is entitled to have and receive all the various items of personal property bequeathed to her by the several subdivisions of paragraph 'FIFTH' of decedent's will.

". . . . . . . . . . . .

"IV

"That an inventory and appraisement of the said estate was returned and filed by said Executor on June 17, 1960, showing the total appraised value of said estate to be $80,071.90, all being the separate estate of decedent.

". . . . . . . . . . . .

"IX

"That under the terms of decedent's will, and in and by paragraph 'FIFTH' thereof, he bequeathed to the petitioner, his wife, Dorothy Walsh Doody, if she survived him, among other assets:

" '(a)' [sic] My two (2) Series E, United States Savings Bonds, which each have a maturity value of $10,000.00;'

"That the inventory and appraisement on file herein show amongst the assets in course of probate administration:

"BONDS:

"The following UNITED STATES OF AMERICA SAVINGS BONDS, Series 'E':

"Eight (8) $1000.00 Bonds, issued January, 1950 . . .

"Four (4) $ 500.00 Bonds, issued January, 1950 . . .

"That the group of bonds above described had a total face value of $10,000.00, were issued by the Bank of America in 1950 in the name of the decedent alone. That he placed them in his safe deposit box at the Security First National Bank . . . where they were at his death.

"That there was also in said box at said time mingled with above mentioned bonds an additional group of United States Savings Bonds, Series 'E', ten in number, each for $1,000.00, likewise of a total face value of $10,000.00 and issued by the Bank of America on July 26, 1948, in decedent's name but expressly made payable on his death to the petitioner. That such bonds formed no part of the assets of decedent's estate but petitioner on his death became, and ever since has been, the absolute owner of same and their proceeds. That such bonds were duly delivered to petitioner by said Executor on February 5, 1960, and encashed by her shortly thereafter. That such bonds were the other group of $10,000.00.

## "X

"That the decedent John W. Doody and the petitioner were married on March 8, 1945. That such marriage was the first marriage of each of them. That there were no children the issue of said marriage. That they resided at 222 South Occidental Boulevard, Los Angeles, California, continuously from 1946 down to and including the time of his death on November 19, 1959. That petitioner lived with the decedent continuously during the entire period of their married life; that such marriage was a happy marriage. That the residence address above mentioned was the same address given on all the 22 bonds, being the total number of the two groups of government bonds issued in 1948 and 1950. That all of decedent's papers and records which he had at a business address maintained by him until about 1956, some four years prior to his death, were brought home by decedent. That decedent never kept any bonds at his home.

## "XI

"That decedent's will was executed on May 2, 1959. That decedent died slightly more than six months thereafter, on November 19, 1959. That the dispositions made by decedent in his will, his general intention and the scheme of disposition were as follows:

"First, Masses for the repose of his soul, with preferred cash bequests to the Loyola High School and the Los Angeles

Orphanage, both stated to be Roman Catholic institutions, totaling $2,400.00. Next, his wife, to whom substantial amounts were bequeathed, consisting of bonds $20,000.00; bank accounts $24,600.00 and $12,300.00 (each at death shown by the inventory to be several hundred dollars more); and corporate stock,—all aggregating over $61,500.00. (That the total inventory value of decedent's estate was the sum of $80,071.90, excluding $10,000 face value of P.O.D. bonds.) Next, one nephew, Thomas Brady White, real estate appraised at $6,400.00. Then, his sister, Marie White, two stocks and a savings and loan account, all appraised at approximately $7,000.00. Lastly, his two nephews, in the following proportions: Two-thirds to Thomas Brady White, and one-third to James R. White, to whom he willed the residue of his estate grossing a little less than $14,400.00, and subject to debts, expenses of administration and cash legacies. The Court finds that such residue so subject to deduction for debts, expenses of administration and specific legacies consisted of bank accounts of $13,350.00, automobile $995.00, and other items of $37.76.

"The Court finds that the dominant testamentary scheme and general intention of the decedent in this matter was to leave the major portion of his estate to his wife and included in it were the government bonds if she survived him; . . .

"XII

"That said decedent did not at the time of the execution of his will, nor at the time of his death, have or own any other United States Savings Bonds than the two groups of bonds referred to in paragraph IX of these findings.

"That in and by paragraph 'FIFTH' of his will decedent gave to his wife, the petitioner, all the assets therein described or referred to, including by subdivision '(a)' thereof all of his said bonds. That said decedent intended by said subdivision '(a)' thereof to describe, and did describe and include, as bonds given to his wife, the said group of bonds having a $10,000.00 face or maturity value which stood in his name alone and were inventoried as part of his estate, as fully as every other item of property bequeathed to her by each of the other subdivisions of said paragraph 'FIFTH' and did not intend to exclude said bonds or to ever include the same in the residue of his estate or the residuary clause of his will, or to have such bonds pass under such residuary clause to his two nephews, the objectors herein. That decedent always referred to such two groups of bonds in the manner set forth in his

will. That he did not refer in his will to any other bonds than those hereinabove described. That he never owned or had any single issue $10,000.00 Series E government bonds.

"The Court finds with respect to subdivision '(a)' of paragraph 'FIFTH' of decedent's will, its application and the property affected thereby, that the word 'groups' is implied and understood in connection with the bonds referred to and disposed thereby, or is to be deemed interpolated therein, so as to remove or correct any uncertainty, inexactness or imperfection of description or identity of the bonds which the Court has found were intended to be bequeathed to decedent's wife, and that any words or the sense of any words which imply bonds of $10,000.00 denominations or values as single issues, or any other kinds or types of bonds than those held by decedent as hereinbefore found, are to be disregarded, to the end that said subdivision '(a)' of paragraph 'FIFTH' of decedent's will shall be and is read and construed as an effective bequest to his wife of said bonds herein found, among other things, to have been intended for her, and not otherwise.

"CONCLUSIONS OF LAW

". . . . . . . . . . . .

"I

"That subdivision '(a)' of paragraph 'FIFTH' of decedent's will bequeathed the bonds described in said petition of Dorothy Walsh Doody for preliminary distribution to her, and that she is entitled to have an order or decree of preliminary distribution distributing the same to her at this time, as a portion of the estate of decedent to which she is entitled, and that her said petition ought to be granted in all respects as prayed for. . . ."

The substance of appellant's numerous contentions is that decedent's will is clear, certain and free from ambiguity and therefore no parol evidence was admissible. We agree with the belief of the trial judge, namely that the will is in fact ambiguous. It is stated in *Estate of Sandersfeld,* 187 Cal.App. 2d 14, 17 [9 Cal.Rptr. 447], as follows:

"When the provisions of a will are the subject of a patent ambiguity, i.e., one appearing upon its face, or a latent ambiguity, i.e., one appearing by virtue of other circumstances, extrinsic evidence may be considered to remove the same. (Prob. Code, § 105.) The existence of a latent ambiguity obviously is disclosed by extrinsic evidence. The admissibility

of such evidence for such purpose is recognized in the provisions of section 105 of the Probate Code that,

" 'When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will *or from extrinsic evidence,* . . .' (Emphasis added.) "

Extrinsic evidence showed that decedent did not at the time of the execution of his will, nor at the time of his death, have or own any United States Savings Bonds other than the two groups referred to. Each of these two groups of bonds had a maturity value of $10,000.

■■ Appellant has misconceived the prohibition contained in Probate Code section 105 insofar as that section excludes the oral declarations of the testator. Not all oral declarations are excluded. By its very terms, section 105 merely excludes ". . . the oral declarations of the testator *as to his intentions;* . . ." (Emphasis added.) ■■ What was stated in *Estate of Nessel,* 164 Cal.App.2d 798 [331 P.2d 205], is dispositive of appellant's contention that the court erred in permitting respondent to testify that her husband referred to these two groups of bonds as "my $10,000 bonds" or "my two $10,000.00 bonds." The court stated at page 804 that:

" [6] While the testimony as to what testator called his daughter [i.e. bonds] is evidence of an oral declaration by the testator, it does not fall within the prohibition of section 105 of the Probate Code inasmuch as it is not a declaration of intent. (*Estate of Brisacher,* 27 Cal.App.2d 327, 331 [80 P.2d 1033].) We conclude that there was no error in taking extrinsic evidence as to the identity of Margie Johnson [i.e., the bonds]. . . ." (See *Estate of Taylor,* 175 Cal.App.2d 669, 671-672 [346 P.2d 884]; *Estate of Hotaling,* 72 Cal.App.2d 848, 857 [165 P.2d 681].)

Appellant's contention that the evidence is insufficient to support the trial court's determination is likewise without merit.

■■ It is appropriately stated in *Estate of McDonald,* 191 Cal.App.2d 565, 571 [12 Cal.Rptr. 823] :

" [7] '. . . [T]he rule is well settled that where, as here, extrinsic evidence is admissible on the issue of intent, the interpretation is at least partially a question of fact and the trial court's interpretation will not be disturbed unless shown to be unreasonable—i.e., is unsupported.' (*Estate of Hotaling, supra,* p. 853.) ■■ 'When the construction given an instru-

ment by a trial court appears to be reasonable and consistent with the intent of a party, appellate courts will not substitute another interpretation though it seems equally tenable. [Citation.] ▮ In the event that a will may appear ambiguous, and evidence is admitted in order to arrive at the testator's intention, inferences and conclusions drawn by the trial court from all of the evidence, and findings made therefrom, have the same weight as the findings of fact made by the trial court in other actions, and such inferences and findings will not be disturbed unless contrary to the inference a reasonable mind might properly draw from the evidence. [Citation.] Such a determination will not be disturbed on appeal unless clearly erroneous. [Citation.]' (*Estate of Boyd,* 24 Cal.App.2d 287, 290 [74 P.2d 1049].)''

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 27, 1962, and appellant's petition for a hearing by the Supreme Court was denied August 1, 1962.