[Civ. No. 29496.   Second Dist., Div. Four.   Feb. 8, 1966.]

Estate of MARTHA AGNES RANDALL, Deceased. AGNES MARIE RANDALL, a Minor, etc., Plaintiff and Appellant, v. JOHN J. VARNI, as Executor, etc., et al., Defendants and Respondents.

Jones & Tollefson and Philip F. Jones for Plaintiff and Appellant.

Thomas T. Johnson for Defendants and Respondents.

BISHOP, J. pro tem.*—On this appeal by the grandniece of the decedent from a decree declaring that a certain fund should go to the residuary legatee and not to the appellant,

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

we are reversing the decree because we are convinced that the trial court erred in refusing to receive evidence, the object of which was to reveal what the testatrix meant by certain words she used in her will.

The facts essential to the plot are neither many nor complicated. The executor of the will filed a petition under section 1080 of the Probate Code praying that the court determine "those who are entitled to distribution of [the] sum of $5,568.09, listed as Item 1 in the inventory and appraisement on file herein." The item referred to was: "Cash on deposit with Veterans Administration Hospital, San Fernando, California $5,568.09." Two other items are listed under the heading of "CASH" along with that quoted. The field of those possibly entitled to receive this item 1 is strictly limited. It must go to one or the other of these two: the grandniece of the testatrix, the appellant here, or to the residuary legatee, the University of Louisville.

If it should be distributed to the grandniece it is because of this provision of the will: "FIFTH: I give and bequeath to my grandniece, AGNES MARIE RANDALL of Route 1, Burlington, Kentucky, all of my household goods, books, silverware, furniture and furnishings, jewelry, clothing and personal effects." Either the provision just quoted authorizes the property in question to go to the grandniece or it comes under the next provision of the will: "SIXTH: All of the rest, residue and remainder of my estate, either real, personal or mixed, of whatsoever kind or character, and wheresoever situated, of which I die possessed . . . I hereby give, devise and bequeath to the University of Louisville, Louisville, Kentucky, . . ." The further words in the subdivision throw no light on our problem, other than to the extent that they, too, indicate, that which was a fact, that the will was drafted by a skilled lawyer, not by the testatrix herself.

The hearing, on the petition, took but a few minutes. After reading the will the court expressed itself as finding no ambiguity in its terms. Counsel for the grandniece announced that he had a witness from the veterans hospital, which called forth an objection to the receipt of any evidence made by the residuary legatee's counsel. An offer of proof was permitted by the court, dealing with two matters. First of all, the testimony of a qualified witness from the veterans hospital was offered to establish that the testatrix was a patient there for a considerable length of time; and that the

words "personal effects" as commonly used by the personnel and patients at the hospital referred not only to the personal belongings of the patients but also to any fund that they had on deposit in the "Patient's Fund Account." The second bit of proof offered was correspondence from the testatrix to the father of the grandniece in which she, referring to the money she had in the "Patient's Fund" in the hospital, stated: "I always have several hundred dollars here on deposit. . . . This I want you to remember, in case of my death whatever amount of money I have here will be a part of my effects, like clothes, jewelry, etc., which you know you are to come here to claim. . . ."

Following its ruling that it saw no ambiguity in the language of the will and was not going to admit any parol evidence, the court signed findings of fact and conclusions of law in harmony with its rulings, and then a decree denying the claim of the grandniece and declaring that the $5,568.09 was a part of the residue of the estate and should go to the University of Louisville. The grandniece filed her appeal from the decree.

In section 101 of the Probate Code we find this sentence: "A will is to be construed according to the intention of the testator." We find it repeatedly stated, as it is in *Estate of Schuster* (1955) 137 Cal.App.2d 125, 128 [289 P.2d 847, 849], that "In the interpretation of a will, ascertainment of the testator's intention is the fundamental rule of construction, to which all others are subordinate. [Citations.]." Another rule is also emphatically reiterated: "The interpretation of the will is not governed by what the testatrix intended to say, but what she intended by what she did say." (*Bochte* v. *Chess* (1954) 124 Cal.App.2d 321, 325 [268 P.2d 493, 496].) Of many possible passages from the authorities, we close with this recent quotation by this court in *Estate of Fries* (1965) 238 Cal.App.2d 558, 561 [47 Cal. Rptr. 888, 891], taken from *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 770, 402 P.2d 839, 842]: "Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect."

One other rule of interpretation is pertinent at this point, that of section 106 of the Probate Code which tells us: "The words of a will are to be taken in their ordinary and gram-

matical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained.'' We must concede, to begin with, that the words that give rise to this appeal—''personal effects''—In their ordinary sense would not include $5,000 on deposit in a veterans home. We give only *Estate of Klewer* (1954) 124 Cal.App.2d 219, 222 [268 P.2d 544, 546, 41 A.L.R.2d 941, 944] and its citations in support of our conclusion.

We agree then, with the trial court; there was no ambiguity in the words used that justified the receipt of extrinsic evidence. There are, however, other situations than the uncertainty of ambiguity that call for a second look at the real meaning of ''personal effects'' or similar terms. As an example, take *Estate of Schuster, supra,* 137 Cal.App.2d at p. 127 [289 P.2d at p. 848], where these words were in question: ''. . . wishing to bequeath my effects in case of my death, to my loved ones, I hereby give to my Mother . . . my house and lot at 2672 Glendower Ave. Los Angeles, my lot on West Third Street . . . and any cash I may have at the time of my death.'' The same justice that authored the opinion in *Estate of Klewer, supra,* 124 Cal.App.2d 219 [268 P.2d 544, 41 A.L.R.2d 941], had no difficulty in concluding that, as used in this context, ''effects'' was not to be limited to its primary meaning, but included the various properties referred to. Moreover, in the *Klewer* opinion the court distinguished its case from that of a case relied upon by the appellant (*Estate of Arnold,* 240 Pa. 261 [87 A. 590]) by pointing out that the will in the Pennsylvania case distributing ''other personal things'' was held to have passed her entire personal estate, because it was found that it was the habit of the testatrix to speak of her property (stock, bonds, cash, jewelry, etc.) as her ''things.'' ''The testimony of the testatrix' habit,'' the court in the *Klewer* opinion went on, ''was 'so full and emphatic' that it constituted 'strongly persuasive evidence that by the words ''and other personal things'' she meant her entire residuary personal estate. . . .' '' But as there was no such evidence in the *Klewer* case, the ordinary meaning had to govern.

In the case before us we find no other term in the will requires the conclusion that by ''personal effects'' the money on deposit in San Fernando was included. True, in the *FOURTH* subdivision of the will the testatrix lists stock, life insurance and other assets, beginning with a sum of between $4,000 and $5,000 on deposit with a Los Angeles office of the

Veterans Administration, but she makes no mention of any sum in the San Fernando veterans hospital. Whatever explanation is to be made of the omission, it is not inconsistent with appellant's theory: it was not necessary to list it; it was being taken care of elsewhere.

The function of words is to convey thought. Why, then, if our objective is to ascertain the testatrix' intention, should we not learn what she meant by what she said? It may be that she used words in a sense that they do not ordinarily convey. This possibility is recognized by the codes, and taken into account. In section 1857 of the Code of Civil Procedure we find: "The language of a writing is to be interpreted according to the meaning it bears in the place of its execution, unless the parties have reference to a different place." We quote this, not because we believe that the veterans hospital is a "place" within its meaning, but as an illustration of the philosophy that under certain conditions a word shall be understood, not in its popular meaning, but as employed by one who had learned to use it in another meaning. So, too, section 1861: "The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement must be construed accordingly." We think that the concluding sentence of section 1856 of the Code of Civil Procedure, "The term agreement includes deeds and wills, as well as contracts between parties" applies to sections 1857 and 1861. In the latter, "writing" turns out to mean "agreement."

We have concluded that in order to give the will a construction according to the intent of the testatrix, the trial court should have admitted the proffered evidence in order that he might know if, as claimed, she had come to use the words "personal effects" as embracing the sum she had on deposit in the hospital where she had the other personal effects. The fact that she omitted, in the list of her other possessions set forth in the *FOURTH* subdivision of her will, all reference to the deposit in the hospital but included one in Los Angeles, would add credence to the testimony offered.

The decree is reversed.

Files, P. J., and Jefferson, J., concurred.

The petition of respondent University of Louisville for a hearing by the Supreme Court was denied April 5, 1966.