[Civ. No. 1186. Fifth Dist. May 14, 1970.]

Estate of ANN KATHERINE MOHR, Deceased.
EMMETT HARRY ERNST, Petitioner and Respondent, v.
ELMER FRANK MOHR et al., Claimants and Appellants.

**COUNSEL**

Crowe, Mitchell, Hurlbutt, Clevenger & Long and Edmund C. Hurlbutt for Claimants and Appellants.

J. J. Brandlin, Walter R. Trinkaus and Maddox, Abercrombie & Kloster for Petitioner and Respondent.

**OPINION**

**GARGANO, J.**—Appellants appeal from an order of the superior court determining interests in the estate of Ann Katherine Mohr. Appellants are the surviving husband and brother of the decedent. Respondent is the surviving husband of decedent's sister, Elizabeth Ernst.

Mrs. Mohr died testate on May 3, 1966. Her will was prepared by an attorney and executed in his presence on March 19, 1956. She bequeathed her share of the community property to her husband, and then disposed of the residue of her estate as follows: "FOURTH: All of the rest, residue and remainder of my property, and all of my separate property, upon my death I give, devise and bequeath to my husband, my sister and my brother, in equal shares, or to the survivor and/or survivors of them."

The will was admitted to probate on July 6, 1966, and letters testamentary were issued to appellant Mohr, to appellant Leiser and to respondent Ernst as directed by the testatrix. Afterward, Ernst filed a petition to determine heirship, alleging that he was entitled to receive one-third of the residuary estate under the fourth clause of the will as the surviving husband of Mrs. Mohr's sister, Elizabeth; Mrs. Ernst died on February 27,

1966. Appellant Leiser then filed a statement of entitlement to one-half of the residuary estate on the ground that he and appellant Mohr were the survivors referred to in the will. A similar statement was filed by Mohr.

By stipulation, it was agreed that the testatrix had been married before her marriage to Mohr, that Mohr has no children, that John Leiser and his wife Clarice have no children, and that Emmett and decedent Elizabeth Ernst had no children. The parties also agreed to submit the cause to the probate judge for decision on the depositions of several witnesses, subject to appellants' contention that letters written and statements made by Mrs. Mohr after she executed her will were inadmissible to interpret the will.

In 1956, the testatrix wrote her sister-in-law Clarice; her exact words follow:

"Dear CHL I Told you tht I'd let you know howmy Will readsy. The beginning says that I devise and bqueath all our personal property to Dinty but in the meantime he has made out his will and he bequeaths all his property as follows:

" 'I, Elmer Frank Mohr, bequeath to my wife, Ann Kathryn Mohr or her heirs, all my real and personal property and I hereby name my wife as executrix of this my will. Should she predecease me, I hereby name as executors Emmett HarryErnst and John Louis Leiser or the survivor of them.'

"That means that although I have willed Dinty all our personal property and it will revert to my heirs.

"My will continues 'all the residue and remainder to my property and all my separate property, upon my death, I give, devise and bequeath to my husband, my sister and my brother in equal shares or to the survivor of survivors of them.

"I hereby appoint my husband, Elmer, Frank Morh, my brother, John Louis, Leiser and my brother in law, Emmett Harry Ernst or the survivors of them the executors thereof and I direct that no Bond or other security be required of them as said executors.'

"So you see that what ever way the ball bounces my family are protected as well as Dinty as long as he lives. When I say brother and sister or their survivours that means the survivors are you and EHE."

After she married Frank Mohr decedent told her sister Elizabeth: "Under my will he [meaning Mohr] is not going to get all of it because in my present will the estate will be divided equally among my husband, my brother, my sister and their spouses as survivors."

Then she said to Emmett Ernst: "Spouses, that means you Emmett and also Clarice."

After her sister died, Mrs. Mohr wrote to her brother-in-law: "I will have to change my will for should Clarice outlive all of us I don't want all my money going to the whole Hazelton family, . . ."

At the conclusion of the hearing on respondent's petition, the probate judge found that there was a patent ambiguity in the fourth paragraph of the will, because the word "and" was used in the phrase "survivor and/or survivors of them," and ruled that the extrinsic evidence to which appellants had objected was admissible to explain the ambiguity. The court also found that the evidence brought to light a latent ambiguity, because two persons could qualify as the survivor of Elizabeth Ernst (her brother John or husband Emmett), and ruled that the extrinsic evidence was admissible to explain this ambiguity as well. The court decreed that one-third of the residuary estate went to Emmett Ernst, the surviving husband of Elizabeth Ernst.

Appellants' first assignment of error challenges the court's ruling that there was a patent ambiguity in the fourth clause of the will. They rely on *Estate of Todd,* 17 Cal.2d 270 [109 P.2d 913], for the proposition that the phrase "survivor or survivors of them" when used in connection with a gift to two or more beneficiaries means the surviving beneficiaries. In *Todd,* the will left the estate "equally, share and share alike, to my said wife, Inez Todd, and my said son, Addison Todd, or to the survivor of them." The California Supreme Court held that it was the testator's intention to substitute Inez Todd as sole legatee under the will in the event of the death of his son, Addison Todd. Appellants argue that because Mrs. Mohr's will was drawn by an experienced lawyer, and because the gift of her residuary estate was to the members of a class, the probate court was compelled, as a matter of law, to conclude that the words "survivor" and "survivors of them" were used by the testatrix in their ordinary legal sense.

It is true that "[w]here the language of a will is clear and unambiguous it must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained therefrom." (*Estate of Carter,* 47 Cal.2d 200, 203 [302 P.2d 301].) It is also true that "[w]here a will is drawn by an experienced and competent lawyer it is presumed that legal terms embodied in the will are used in their legal sense." (*Estate of Carter, supra,* at p. 205.) But, the intention of the testator is the paramount consideration; it is the " 'polar star of construction' " to which all other rules must yield (*Estate of Robinson,* 262 Cal.App.2d 32, 36 [68 Cal.Rptr. 420]; *Estate of Wilson,* 184 Cal. 63 [193 P. 581]; *Estate of Spreckels,* 162 Cal. 559 [123 P. 371]). Thus, extrinsic evidence is admissible to explain

patent or latent ambiguities (Prob. Code, § 105; *Estate of Russell,* 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353]).[1] █ And, the modern tendency is to admit evidence to show the testator's understanding of the words used in his will even though there is no obvious ambiguity (*Estate of Randall,* 240 Cal.App.2d 85 [49 Cal.Rptr. 280]). As the court said in *Estate of Russell, supra,* at page 209: " 'Words are used in an endless variety of contexts. Their meaning is not subsequently attached to them by the reader but is formulated by the writer and can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended.' "

Admittedly, the great weight of authority adheres to the view that ordinarily the term "survivor" when used in its ordinary legal sense, means "the longest liver . . . of any two persons joined in the right of a thing" (40A Words and Phrases 535, 536) " '. . . so that the last survivor of a class will take the whole share of one dying although others of the class have all died leaving issue.' " (*McKenty* v. *Caldwell,* 287 Ky. 750 [155 S.W.2d 193].) █ Nevertheless, the phrase "the survivor or survivors of them" does not necessarily have the precise legal meaning ascribed to it by appellants. It is permissibly susceptible to other interpretations, depending on the manner and context in which it is used.[2] And, the instant case is a good example. In the closing phrase of the fourth clause of her will, Mrs. Mohr, in one and the same breath, used two conjunctions creating alternatives; the use of the connective "or" in the phrase or to the survivor "or" survivors of them is clearly a reference to the beneficiaries; however, when Mrs. Mohr used "and," it became meaningless and redundant unless she was referring to someone other than, or in addition to, the surviving beneficiaries. Consequently, the probate judge properly admitted extrinsic evidence to clarify the uncertainty; and because both John Louis Leiser and Emmett Harry Ernst were the survivors of Elizabeth

---

[1]A patent ambiguity is an uncertainty which appears on the face of the will itself (*Estate of Womersley,* 164 Cal. 85 [127 P. 645]). But, it also exists when in the light of circumstances surrounding the execution of the instrument the written language is fairly susceptible to two or more constructions (*Estate of Russell, supra,* 69 Cal.2d 200; *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785]). A latent ambiguity is one which is not apparent on the face of the will but is discovered by some fact collateral to it: where two or more persons answer a description in the will (*Estate of Donnellan,* 164 Cal. 14 [127 P. 166]).

[2]In *Estate of Todd, supra,* 17 Cal.2d 270, the gift was to the testator's wife and son or to the survivor (in the singular) of them, and it was absolutely clear that the testator was referring to the surviving beneficiary.

Ernst, the court correctly ruled that the ambiguity was latent as well as patent.

We turn next to appellants' contention that in any event the extrinsic evidence which the court considered to explain the ambiguity was incompetent and objectionable. Appellants' arguments are threefold: that the testatrix' oral statements to her sister Elizabeth and to respondent Emmett Ernst were totally inadmissible under Probate Code section 105; that the letter Mrs. Mohr wrote to her sister-in-law Clarice is more confusing than illuminating because it does not accurately quote the will; that the letter decedent wrote to Emmett Ernst, after the death of her sister Elizabeth, stating "I will have to change my will for should Clarice outlive all of us I don't want all my money going to the whole Hazelton family," supports their position because it demonstrates that Mrs. Mohr was under the impression that the share of a deceased beneficiary went to the surviving beneficiaries and was fearful that Clarice would inherit all the property from John Louis Leiser, the most likely survivor of the three named beneficiaries.

Clearly, Probate Code section 105 limits extrinsic evidence admissible to explain a patent or latent ambiguity in a will to the circumstances under which the will was made. Furthermore, the declarations of the testator as to his intentions are excluded. However, a person's state of mind with reference to the meaning of particular language used by him in a will is a circumstance surrounding the making of the will. And, the proscription of section 105 does not apply to the testator's oral declarations if they are offered to prove a state of mind (*Estate of Fries*, 221 Cal.App.2d 725, 730 [34 Cal.Rptr. 749]; *Estate of Doody*, 204 Cal.App.2d 419, 426 [22 Cal. Rptr. 264]). In short, the oral declarations of a testator are admissible if they do not relate to intent, but are an aid to the interpretation of uncertain or imperfect descriptions (*Estate of Brisacher*, 27 Cal.App.2d 327, 331 [80 P.2d 1033]).

In *Estate of Glow*, 208 Cal.App.2d 613 [25 Cal.Rptr. 416], the testatrix left all of her property to the "Broude Trust Fund" even though no such trust fund was in existence at the time of her death. The probate court, over objection, allowed decedent's brother to testify that he heard his sister refer to her brothers and sisters as the "Broude Trust" and that she told him that " 'she had taken care of her brothers and sisters in the Broude Trust Fund and that they were all to share equally.' " In affirming the judgment on appeal, the appellate court held that the testatrix' oral statements to her brother were admissible, not to prove her intentions, but to make certain the identity of the beneficiary imperfectly described in the will.

In *Estate of Randall, supra,* 240 Cal.App.2d 85, the will, as in this case,

was drawn by an experienced lawyer. It bequeathed all of the testatrix' "household goods, books, silverware, furniture and furnishings, jewelry, clothing and personal effects" to her grand niece, Agnes Marie Randall. The remainder of the estate "either real, personal or mixed, of whatsoever kind or character, and wheresoever situated," was left to the University of Louisville. At the hearing on the executor's petition to determine heirship, both the grand niece and the University of Louisville claimed the sum of $5,568.09 which was on deposit in the "patient's fund account" of the hospital in which the testatrix died. The grand niece offered to prove that the term "personal effects" as commonly used by the hospital personnel and the hospital patients referred not only to patients' personal belongings but also to money they had on deposit in the patient's fund account. Miss Randall also offered a letter the testatrix had written to the beneficiary's father stating, "I always have several hundred dollars here on deposit . . . . This I want you to remember, in case of my death whatever amount of money I have here will be a part of my effects, like clothes, jewelry, etc., which you know you are to come here to claim . . . .' " The probate court found no ambiguity in the language of the will, ruled the proffered evidence inadmissible and awarded the money to the University of Lousville. In reversing the judgment the appellate court, at page 89 of the opinion, had this to say: "The function of words is to convey thought. Why, then, if our objective is to ascertain the testatrix' intention, should we not learn what she meant by what she said? It may be that she used words in a sense that they do not ordinarily convey. This possibility is recognized by the codes, and taken into account. In section 1857 of the Code of Civil Procedure we find: 'The language of a writing is to be interpreted according to the meaning it bears in the place of its execution, unless the parties have reference to a different place.' We quote this, not because we believe that the veterans hospital is a 'place' within its meaning, but, as an illustration of the philosophy that under certain conditions a word shall be understood, not in its popular meaning, but as employed by one who had learned to use it in another meaning. So, too, section 1861: 'The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement must be construed accordingly.' We think that the concluding sentence of section 1856 of the Code of Civil Procedure, 'The term agreement includes deeds and wills, as well as contracts between parties' applies to sections 1857 and 1861. In the latter, 'writing' turns out to mean 'agreement.' "

We believe that the letter which Mrs. Mohr wrote to her sister-in-law Clarice unequivocally establishes her understanding of the meaning

of the language used in the fourth clause of her will, and of itself, fully supports the probate court's interpretation of this clause. While the letter does not quote the language of the will with precision, it demonstrates that the testatrix was keenly aware of the contents of her will and lucidly explains that she understood the words "survivor" and "survivors of them" to mean the spouses of her brother and sister, not the survivors of the named beneficiaries. Moreover, this letter is extremely reliable evidence. It was written by the testatrix shortly after she executed her will, was produced by the spouse of an adverse party and is corroborated by Emmett Ernst's testimony (which the probate judge chose to believe) that the decedent told him, "spouses, that means you Emmett and also Clarice."

We compendiously reject appellants' suggestion that the letter Mrs. Mohr wrote to Emmett Ernst, after her sister's death, supports their position that the testatrix was under the impression that she had left the share of a deceased beneficiary to the surviving beneficiaries and creates an irreconcilable conflict in the evidence. This letter is also susceptible to the interpretation that the testatrix believed that the share of a deceased beneficiary went to the surviving spouse but was fearful that both she and her brother would outlive Emmett Ernst and Frank Mohr and that Clarice would eventually inherit all of the property as Leiser's survivor.

The judgment is affirmed.

Stone, P. J., and Coakley, J., concurred.